## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (___)<br><br>(Joint Administration Requested) |

## APPLICATION FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C. § 156(c), *NUNC PRO TUNC* TO THE PETITION DATE

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc. ("Holdings"), and USA Discounters Credit, LLC ("Credit LLC"), the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby file this application (the "Application"), pursuant to section 156(c) of title 28 of the United States Code, Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order, in substantially the form attached hereto as **Exhibit C**: (i) authorizing and approving the retention and appointment of Kurtzman Carson Consultants LLC ("KCC") as claims and noticing agent for the Office of the Clerk (the "Clerk") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and (ii) providing any additional relief required in order to effectuate the foregoing. In support of this Application, the Debtors rely on the *Declaration of Timothy W. Dorsey in Support of First Day Motions* (the "Dorsey Declaration") concurrently

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

filed herewith and the declaration of Evan Gershbein (the "Gershbein Declaration"), attached

hereto as **Exhibit A** and incorporated by reference herein.  In further support of the Application,

the Debtors respectfully represent as follows:

## I. JURISDICTION

1.       The Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of*

*Reference* dated February 29, 2012, from the United States District Court for the District of

Delaware.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue

of these Cases and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.       Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of

a final judgment or order with respect to the Application if it is determined that the Court, absent

consent of the parties, cannot enter final orders or judgments consistent with Article III of the

United States Constitution.

3.       The statutory and other predicates for the relief requested herein are 28 U.S.C.

§ 156(c), Bankruptcy Rule 2002, and Local Rule 2002-1(f).

## II. BACKGROUND

4.       On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.

5.       The Debtors are authorized to continue to operate their business and manage their

property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

To date, no statutory committee has been appointed in these Cases.

6.       As of the Petition Date, USA Discounters is engaged in the retail business and

operates seven retail stores located in five different states, all of which use the "Fletcher's

Jewelers" brand.  USA Discounters' business operations previously included twenty-four other

retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and other consumer products, but all of the "USA Living" stores were closed in the months preceding the Petition Date.

7.       USA Discounters' business was built on generating sales via consumer credit provided by USA Discounters through installment contracts or revolving contracts, with USA Discounters retaining and servicing the resulting customer receivables.  As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million.  USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract.  USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date.  Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

8.       USA Discounters historically focused on serving members of the United States military and their families.  Due to various financial and regulatory changes within the military, military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

9.       The decline in the military member customer base coincides with increased challenges in the broader consumer retail space.  Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché, Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have

commenced bankruptcy cases for the specific purpose of liquidating their business operations. Several other retail businesses – including RadioShack Corporation – have used the bankruptcy process to effect going concern sales of certain core business operations, although after substantially reducing their retail footprints.

10.    In the face of this very challenging retail environment and external policy changes adversely affecting their business model, as well as defaults under USA Discounters' approximately $60 million secured credit facility (which matures in October 2015 in any event), the Debtors thoroughly considered the options available to maximize value for their stakeholders under the circumstances. After determining that USA Discounters would be unable to refinance or extend its outstanding secured credit facility, and after being unable to locate a going-concern buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11 bankruptcy cases. The relief sought in this Motion is intended to preserve value and facilitate USA Discounters' operations through this process and into the next phases of these Cases.

11.    More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the Dorsey Declaration.

### III.  RELIEF REQUESTED

12.    This Application is made pursuant to 28 U.S.C. § 156(c), Bankruptcy Rule 2002, and Local Rule 2002-1(f) for an order appointing KCC to act as the claims and noticing agent in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' Cases. The Debtors' selection of KCC to act as the claims and noticing agent has substantially satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "Claims Agent Protocol").

13.    In accordance with the Claims Agent Protocol, prior to the selection of KCC, the Debtors obtained and reviewed engagement proposals from three other court-approved claims and noticing agents to ensure selection through a competitive process. The Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise. The terms of retention are set forth in the KCC Agreement for Services (the "Services Agreement") annexed hereto as **Exhibit B**; *provided*, *however*, that, at this time, the Debtors are seeking approval solely of the terms and provisions as set forth in this Application and the proposed order attached hereto.

## IV.  QUALIFICATIONS

14.    Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed. In view of the number of anticipated claimants and the complexity of USA Discounters' business, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of the Debtors' estates and their creditors.

15.    KCC has acted as the claims and noticing agent in numerous cases of comparable size in the United States Bankruptcy Court for this District. *See e.g.*, *In re Endeavour Operating Corporation*, Case No. 14-12308 (Bankr. D. Del. Oct. 15, 2014); *In re FCC Holdings*, Case No. 14-11987 (Bankr. D. Del. Aug. 27, 2014); *In re Source Home Ent'mt, LLC*, Case No. 14-11553 (Bankr. D. Del. Jun. 23, 2014); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (Bankr. D. Del. Apr. 3, 2014); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (Bankr. D. Del. Nov. 12, 2013); *In re Global Aviation Holdings Inc.*, Case No. 13-12945 (Bankr. D. Del. Nov. 12, 2013); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (Bankr. D. Del. Jun. 14, 2013); *In re Synagro Tech., Inc.*, Case No. 13-11041 (Bankr. D. Del. Apr. 24, 2013); *In re The Dolan Co.*, Case No. 14-10614 (Bankr. D. Del. Mar. 23, 2014); *In re Ormet Corp.*, Case No. 13-10334

(Bankr. D. Del. Feb. 25, 2013); *In re Penson Worldwide, Inc.*, Case No. 13-10061 (Bankr. D. Del. Jan. 11, 2013).[2]

16.     By appointing KCC as the claims and noticing agent in these Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

### V.  SERVICES TO BE RENDERED

17.     This Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f), and any work to be performed by KCC outside of this scope is not covered by this Application or by any Order granting approval hereof.  By separate application, the Debtors will seek to retain KCC as their administrative advisor under section 327(a) of the Bankruptcy Code.  As it relates to this Application, KCC will perform the following tasks in its role as claims and noticing agent, as well as all quality control relating thereto:

   a. Prepare and serve required notices and documents in these Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court including: (i) notice of the commencement of the Cases and the initial meeting of creditors under Bankruptcy Code § 341(a); (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; (vii) notice of hearing on

---

[2]  Copies of these orders are available upon request, and have not been included because they are too voluminous.

motions filed by the United States Trustee; (viii) any motion to convert, dismiss, appoint a trustee, or appoint an examiner filed by the United States Trustee's office; and (ix) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Cases;

b.  Maintain copies of all proofs of claim and proofs of interest filed in these Cases;

c.  Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

d.  Maintain (i) a list of all potential creditors, equity holders, and other parties in interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

e.  Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

f.  Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

g.  For *all* notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

h.  Process all proofs of claim received, including those received by the Clerk, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

i.  Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*); (vi) the applicable Debtor; and (vii) any disposition of the claim;

j.  Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

k.  Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

l.  Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

m.  Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

n.  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

o.  Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Cases as directed by the Debtors or the Court, including through the use of a website and/or call center;

p.  If these Cases are converted to chapter 7, contact the Clerk within three (3) days of the notice to KCC of entry of the order converting the Cases;

q.  Thirty (30) days prior to the closure of these Cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing KCC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these Cases;

r.  Within seven (7) days of notice to KCC of entry of an order closing these Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of these Cases; and

s.  At the close of these Cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk.

18.     The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

19.     KCC shall not employ any past or present employee of the Debtors for work that involves the Debtors' Cases.

20.     Pursuant to the Debtors' request, KCC has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that KCC may be compensated for its pre-application services.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period.  Courts in this District have routinely approved *nunc pro tunc* employment similar to that requested herein in comparable matters.  *See, e.g.*, *In re MIG, LLC and ITC Cellular, LLC*, Case No. 14-11605 (KG) (Bankr. D. Del. Jul. 2, 2014); *In re Mach Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014); *In re Fisker Auto. Holdings*, Case No. 13-13087 (KG) (Bankr. D. Del. Nov. 26, 2013).

## VI.  COMPENSATION

21.     The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.

22.     KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors, and any party in interest who specifically requests

service of the monthly invoices. If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

23.     Before the Petition Date, the Debtors provided KCC a retainer in the amount of $15,000. KCC seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during these Cases as security for the payment of fees and expenses under the Services Agreement. Following termination of the Services Agreement, KCC will return to the Debtors any amount of the retainer that remains.

24.     Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend and hold harmless KCC and its members, officers, employees, representatives, and agents under certain circumstances specified in the Services Agreement, provided that the Debtors shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution or reimbursement under the terms of the Services Agreement as modified by the Order. The Debtors believe that

such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these Cases.

25.    The Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

### VII. DISINTERESTEDNESS

26.    In connection with its retention as claims and noticing agent, KCC represents in the Gershbein Declaration, among other things, that:

a.  KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in these Cases;

b.  By accepting employment in these Cases, KCC waives any right to receive compensation from the United States government in its capacity as the claims and noticing agent in these Cases;

c.  In its capacity as the claims and noticing agent in these Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

d.  KCC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these Cases; and

e.  KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

27.    To the extent that there is any inconsistency between this Application, the Retention Order, and the Services Agreement, the Retention Order shall govern.

### VIII. NOTICE

28.    Notice of this Application has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims on a

consolidated basis against the Debtors; (iii) the Prepetition Agent; and (iv) all parties who have

filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

As this Application is seeking "first day" relief, within two business days of the hearing on this

Motion, the Debtors will serve copies of this Application and any order entered in respect to this

Application as required by Local Rule 9013-1(m).  In light of the nature of the relief requested

herein, the Debtors submit that no other or further notice is necessary.

## IX.  CONCLUSION

WHEREFORE, the Debtors request entry of an order, in the form annexed hereto as

**Exhibit C**, authorizing KCC to act as claims and noticing agent for the maintenance and

processing of claims and the distribution of notices.


Dated:  August 24, 2015                    Respectfully submitted,

                                           USA Discounters, Ltd., *et al.*,
                                           Debtors and Debtors in Possession


                                           Timothy Dorsey
                                           Vice President

13