**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| USA DISCOUNTERS, LTD., *et al.*,[1] | Case No. 15-11755 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING
ADEQUATE PROTECTION TO THE SECURED PARTIES, (C) MODIFYING THE
AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING
RELATED RELIEF**

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc.

("Holdings"), and USA Discounters Credit, LLC ("Credit LLC"), the debtors and debtors in

possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move

the Court (the "Motion") for entry of an interim order on an expedited basis (the "Interim

Order"), substantially in the form attached hereto as **Exhibit A**, and following a final hearing to

be set by the Court (the "Final Hearing"), entry of a final order (the "Final Order"), pursuant to

sections 105, 361, 362, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-

1532 (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court

for the District of Delaware (the "Local Rules"), authorizing the use of cash collateral, granting

adequate protection to the Prepetition Agent and the Prepetition Lenders (each as defined below)

as set forth therein, modifying the automatic stay as set forth therein, and granting related relief.

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

**The Debtors understand that the Prepetition Agent and the Prepetition Lenders will consent to entry of the Interim Order.**

In support of the Motion, the Debtors rely on the *Declaration of Timothy W. Dorsey in Support of First Day Motions* (the "Dorsey Declaration") and the *Declaration of Laurence Sax in Support of Cash Collateral Motion* (the "Sax Declaration") concurrently filed herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

## II. RELIEF REQUESTED

4. By this Motion, the Debtors request that the Court schedule the Final Hearing and enter interim and final orders authorizing use of cash collateral as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), provision of adequate protection for the Prepetition Agent and the Prepetition Lenders (each as defined below), and modifications of the automatic stay.

5.      As more fully set forth in the Dorsey Declaration and the Sax Declaration, USA

Discounters has an urgent and immediate need for the use of Cash Collateral.  The Debtors have

not obtained postpetition financing and, without the use of Cash Collateral, USA Discounters

will not be able to continue operations, pay critical obligations, or effectuate an orderly wind-

down process that will maximize value for creditors.

6.      The Debtors are informed that the Prepetition Agent and the Prepetition Lenders

will consent to entry of the Interim Order based on the forms of adequate protection set forth

therein.  As such, the use of Cash Collateral will be consensual and is authorized pursuant to

section 363(c)(2)(A) of the Bankruptcy Code.

## III. BACKGROUND

### A.      General Background

7.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.

8.      The Debtors are authorized to continue to operate their business and manage their

property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

To date, no statutory committee has been appointed in these Cases.

9.      As of the Petition Date, USA Discounters is engaged in the retail business and

operates seven retail stores located in five different states, all of which use the "Fletcher's

Jewelers" brand.  USA Discounters' business operations previously included twenty-four other

retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and

other consumer products, but all of the "USA Living" stores were closed in the months preceding

the Petition Date.

10.      USA Discounters' business was built on generating sales via consumer credit

provided by USA Discounters through installment contracts or revolving contracts, with USA

3

Discounters retaining and servicing the resulting customer receivables.  As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million.  USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract.  USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date.  Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

11.    USA Discounters historically focused on serving members of the United States military and their families.  Due to various financial and regulatory changes within the military, military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

12.    The decline in the military member customer base coincides with increased challenges in the broader consumer retail space.  Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché, Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have commenced bankruptcy cases for the specific purpose of liquidating their business operations.  Several other retail businesses – including RadioShack Corporation – have used the bankruptcy process to effect going concern sales of certain core business operations, although after substantially reducing their retail footprints.

4

13.    In the face of this very challenging retail environment and external policy changes adversely affecting their business model, as well as defaults under USA Discounters' approximately $60 million secured credit facility (which matures in October 2015 in any event), the Debtors thoroughly considered the options available to maximize value for their stakeholders under the circumstances.  After determining that USA Discounters would be unable to refinance or extend its outstanding secured credit facility, and after being unable to locate a going-concern buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11 bankruptcy cases.  The relief sought in this Motion is intended to preserve value and facilitate USA Discounters' operations through this process and into the next phases of these Cases.

14.    More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the Dorsey Declaration.

**B.    Prepetition Secured Indebtedness**

15.    USA Discounters is the borrower under that certain *Loan and Security Agreement* dated as of October 3, 2012 (as subsequently amended, supplemented, or modified, including on July 24, 2013, September 30, 2014, and June 24, 2015, the "Prepetition Loan Agreement" and together with the Credit Documents, as defined in the Prepetition Loan Agreement, the "Prepetition Credit Documents"), whereby a syndicate of lenders (the "Prepetition Lenders") agented by Wells Fargo Bank, N.A. (in such capacity, the "Prepetition Agent," and, together with the Prepetition Lenders, the "Secured Parties") provided an asset-backed revolving credit facility of up to an original maximum principal amount of $85,000,000 and with a stated maturity date of October 3, 2015 (the "Prepetition Facility").  As of the Petition Date, the outstanding principal amount of all Obligations (as defined in the Prepetition Loan Agreement) owing by USA Discounters to the Secured Parties under and in connection with the Prepetition

Credit Documents was approximately $60 million, plus additional amounts on account of accrued and accruing interest, charges, fees, costs, and expenses (including attorneys' fees and legal expenses).

16.     Borrowings under the Prepetition Credit Documents are secured by valid, perfected, enforceable, and non-avoidable first priority security interests and liens on substantially all of the personal property of USA Discounters (the "Prepetition Collateral"), including all its accounts receivable, inventory, and general intangibles, as well as cash and non-cash proceeds of any collateral (and thus Cash Collateral). The Prepetition Agent not only is the depository bank on many of USA Discounters' deposit accounts, but also has extant deposit account control agreements regarding USA Discounters' primary deposit accounts.

17.     An event of default occurred under the Prepetition Loan Agreement in April 2015 (due to USA Discounters failing to meet certain financial covenants). The Debtors are unaware of any lender (including the existing lenders) willing to refinance the Prepetition Facility, either now or at its scheduled maturity in less than two months.

18.     Neither Holdings nor Credit LLC is a borrower, guarantor, or otherwise liable with respect to the Prepetition Facility.

19.     The Debtors are unaware of any party other than the Prepetition Agent and the Prepetition Lenders that has a lien or other interest in respect of any of the Cash Collateral.

## IV.  SUMMARY OF PROPOSED ORDERS

20.     In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-2(a)(ii), below is a summary[2] of the terms of the proposed use of Cash Collateral:

---

[2]  The summary of the Interim Order and the terms and conditions for the use of Cash Collateral set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summary is qualified in its entirety by the Interim Order. In the event there is any conflict between this Motion and the Interim Order, the Interim Order will control in all respects.

6

a.    <u>Amount of Cash Collateral to Be Used</u>. (Interim Order ¶ 3(a)). The Debtors seek authority for USA Discounters to use Cash Collateral in an amount consistent with the expenditures described in a 13-week cash collateral budget, the initial form of which is attached to the proposed Interim Order as **Exhibit 1** (the "<u>Budget</u>").

b.    <u>Parties with an Interest in Cash Collateral</u>. The principal party with an interest in the Cash Collateral is the Prepetition Agent, acting on behalf of the Prepetition Lenders under the Prepetition Facility.

c.    <u>Use of Cash Collateral</u>. (Interim Order ¶ 3(a)). The Debtors seek authority for USA Discounters to use Cash Collateral, wherever such Cash Collateral may be located, in accordance with the terms of the Interim Order for, among other things, (i) working capital requirements, (ii) general corporate purposes, and (iii) the costs and expenses of administering USA Discounters' Case, including, without limitation, making adequate protection payments, paying allowed fees and expenses incurred by the professionals retained under sections 327, 328, 363, and/or 1102 of the Bankruptcy Code by USA Discounters and by any statutory committees appointed in its Case pursuant to section 1102 of the Bankruptcy Code (each, a "<u>Committee</u>"), and making payments under the Carve-Out, in each case, pursuant to and solely in accordance with the Budget.

d.    <u>Termination Date</u>. (Interim Order ¶ 5). The ability to use Cash Collateral pursuant to the Interim Order shall end on the earliest to occur of: (i) the first business day that is thirty-five (35) days after the Petition Date (unless such period is extended by the Required Prepetition Lenders) if the Final Order in form and substance acceptable to the Required Prepetition Lenders has not been entered on or before such date, (ii) the termination or modification of the Interim Order or the failure of the Interim Order to be in full force and effect, (iii) the entry of an order terminating the right to use Cash Collateral, (iv) the first business day that is at least 180 days after the Petition Date (or such later date agreed to in writing by the Required Prepetition Lenders), (v) the dismissal or conversion of the Case, (vi) the appointment of a trustee or an examiner with expanded powers, and (vii) the expiration of the seven (7) business day Cure Period following the delivery of a Default Notice by the Required Prepetition Lenders.

e.    <u>Adequate Protection</u>. (Interim Order ¶¶ 8-10). Subject to the Carve-Out and the terms of the Interim Order, and solely to the extent of any decrease in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale, or lease of other Prepetition Collateral, or the imposition of the automatic stay, USA Discounters grants to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and liens (the "<u>Adequate Protection Liens</u>") on all property, whether now owned or hereafter acquired or existing and wherever located, of USA Discounters and its

estate, of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created. Subject to the Carve-Out, the Adequate Protection Liens shall be (a) first priority perfected liens on all of the Collateral that is not otherwise encumbered by validly perfected, non-avoidable security interests as of the Petition Date, (b) first priority perfected liens on all of the Collateral as to which the Secured Parties had a valid and perfected priority lien as of the Petition Date, even if such Collateral is subject to a validly perfected lien that is junior to the lien of the Secured Parties, and (c) junior perfected liens on all Collateral that is subject to a validly perfected lien with priority over the Prepetition Liens as of the Petition Date. The attachment of the Adequate Protection Liens on Avoidance Actions (other than under section 549 of the Bankruptcy Code) is subject to entry of the Final Order. In addition to the Adequate Protection Liens, the proposed adequate protection includes superpriority claims for and certain payments to the Secured Parties (including periodic principal paydowns calculated under an advance-rate formula,[3] monthly payment of interest on account of the outstanding Secured Obligations, and payment of other costs and expenses, including professional fees), all as more fully set forth in paragraphs 9 and 10 of the proposed Interim Order and projected in the Budget.

f.   <u>Automatic Perfection</u>. (Interim Order ¶ 8(a)). The Adequate Protection Liens shall be automatically perfected postpetition security interest and liens without the necessity of the execution by USA Discounters (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

g.   <u>Carve Out</u>. (Interim Order ¶ 8(c)). The Adequate Protection Lien and Superpriority Claim shall be subordinate to a carve out (the "<u>Carve-Out</u>") which shall be comprised of the five categories set forth in paragraph 8(c) of the Interim Order, which include fees and expenses payable to the Court and the US Trustee, certain pre- and post-termination professional fees, certain employee-related obligations, and sales tax obligations, in each case on the specific terms and conditions more fully set forth in paragraph 8(c).

h.   <u>Events of Default</u>. (Interim Order ¶ 14). USA Discounters' right to use Cash Collateral may be limited if one or more of 13 potential Events of Default (including events related to breach of an agreed timeline for filing and confirming an acceptable chapter 11 plan) occur, all as more fully set forth in paragraph 14.

---

[3]   More specifically, payments will be required to reduce the outstanding principal amount to the "Maximum Principal Amount" (as defined in the Prepetition Loan Agreement). This amount, in turn, is determined by reference to the "Borrowing Base" (as defined in the Prepetition Loan Agreement). The "Borrowing Base" is calculated within 10 business days after the end of each month using an "Advance Rate" as against certain assets of USA Discounters. Paragraph 10(b) of the Interim Order increases the "Advance Rate" from 80% to 85%, which is a favorable change for USA Discounters because it increases the amount of the "Borrowing Base" that is available.

## V. DISCLOSURES

21.     Pursuant to Bankruptcy Rule 4001(c) and Local Rule 4001-2(a)(i), a debtor in possession seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing.  The debtor in possession must also justify the inclusion of such provisions.  Set forth below are the disclosures required in accordance with such rules:

a.     Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing.  **The proposed Interim Order and Final Order will not provide for cross-collateralization protection except through the grant of adequate protection liens to the extent of any diminution in the Prepetition Agent's interests in USA Discounters' assets.**

b.     Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or (ii) involve the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and a creditors' committee at least sixty (60) days from the date of its formation to investigate such matters.  **The proposed Interim Order and Final Order will contain stipulations relating to the validity, perfection, enforceability, and amount of the Prepetition Liens and claims under the Prepetition Facility.  However, all such stipulations are expressly subject to challenge by parties in interest within the time frames provided by the Local Rule.** *See* ¶¶ E & 4.

c.     Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code.  **The proposed Interim Order will provide for a waiver of rights under section 506(c) of the Bankruptcy Code, <u>subject to entry of the Final Order</u>.** *See* ¶ 21.  **Hence, adequate notice will be provided before any surcharge waiver goes into effect.**

d.     Local Rule 4001-2(a)(i)(D) and Bankruptcy Rule 4001(c)(1)(B)(xi) require disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code.  **The proposed Interim Order will not contain any provisions that immediately grant liens on claims and causes of action arising under sections 544, 545, 547, 548 of the Bankruptcy Code.  Any such liens are <u>subject to entry of the Final Order</u>.** *See* ¶ 8(a).  **The proposed Interim Order does contain provisions immediately granting liens**

9

**on causes of action under section 549 of the Bankruptcy Code, however, because such causes of action would involve a disposition of encumbered collateral.** *See id.*

e.  Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).  **The proposed Interim Order and Final Order will not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).**

f.  Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out.  **The proposed Interim Order and Final Order will provide for disparate treatment for the professionals retained by a Committee only in that the Carve-Out regarding Committee professionals will be subject to a monthly budget amount.** *See* ¶ 8(c).

g.  Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder.  **The proposed Interim Order and Final Order will not provide for the priming of any secured lien without the consent of that lienholder.**

h.  Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider equities of the case under section 552(b)(1) of the Bankruptcy Code.  **The proposed Interim Order will provide for a waiver of the "equities of the case" exception, <u>subject to entry of the Final Order</u>.** *See* **¶ 22.  Hence, adequate notice will be provided before this waiver goes into effect.**

i.  Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case.  **The proposed Interim Order and Final Order will describe the specific forms of adequate protection provided to the Prepetition Agent and the Prepetition Lenders.** *See* ¶¶ **8-10.**

j.  Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay.  **The proposed Interim Order and Final Order will describe the modification of the automatic stay to the extent necessary to implement those orders.** *See* ¶ 11.

k.  Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a

lien on property of the estate. **The proposed Interim Order and Final Order will include provisions that provide for the automatic perfection and validity of the Adequate Protection Liens without the necessity of any further filing or recording under the laws of any jurisdiction.** *See* ¶ 8(a).

## VI.  BASIS FOR RELIEF

22.     Without immediate access to Cash Collateral, the repercussions to USA Discounters' business will be catastrophic and likely irreparable, ending its ability to function as an entity seeking to maximize value for all stakeholders.  USA Discounters needs access to Cash Collateral to fund, among other things, payroll for approximately 163 current employees, expenses of continuing the inventory sale process, operating expenses associated with its remaining open retail stores, and to otherwise fulfill its obligations and pay its debts in the ordinary course of business.

23.     As detailed more fully below, if the Motion is not approved, USA Discounters' only alternative would be a rapid and disorderly liquidation or conversion to chapter 7, as USA Discounters would be unable to sustain operations or maximize the value of its assets during the pendency of the Cases.  In this regard, the relief sought in this Motion should be granted.

**A.     USA Discounters Has an Immediate Need to Use Cash Collateral**

24.     Bankruptcy Rule 4001(b) permits the Court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  *See also In re Am. Safety Razor Co., LLC*, No. 10-12351 (MFW), 2010 Bankr. LEXIS 5994, at *37–38, 24 (Bankr.

11

D. Del. July 30, 2010) (approving interim use of cash collateral pursuant to Bankruptcy Rule 4001(b)(2) upon a finding that the proposed use "reflect[s] the Debtors' exercise of prudent business judgment"); *In re Centaur, LLC*, No. 10-10799 (KJC), 2010 Bankr. LEXIS 5795, at *22, 25 (Bankr. D. Del. March 11, 2010) (same); *In re Penn Traffic Co.*, No. 09-14078 (PJW), 2009 Bankr. LEXIS 5422, at *16-18 (Bankr. D. Del. Nov. 19, 2009) (same).

25.     After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

26.     As previously noted, in order to address working capital needs, continue the ongoing inventory sales process, and fund other costs and expenses associated with its efforts to maximize value, USA Discounters requires access to Cash Collateral.  The use of Cash Collateral will provide USA Discounters with the necessary capital with which to continue the wind-down process, including funding USA Discounters' obligations to its employees, and to successfully exit chapter 11.

27.     Cash is necessary for working capital and capital expenditures, and for operating costs and expenses incurred during these Cases.  USA Discounters does not have any available sources of working capital or financing to carry on the continuing orderly wind-down of its business without the use of Cash Collateral.  USA Discounters' ability to maximize the value of its estate is dependent on its ability to continue to proceed in an orderly fashion post-bankruptcy, and USA Discounters cannot proceed in that fashion unless it can fund payments for postpetition goods, services, and other operating expenses.  Use of the Cash Collateral thus is essential to USA Discounters' continued viability and the value of its assets; indeed, if interim relief is not obtained, USA Discounters' assets will be immediately and irreparably jeopardized, to the detriment of its estate, its creditors, and other parties in interest.

28.     Further, the alternative in these cases is "to force the debtors to close down their operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of *all* classes of creditors and other constituencies involved in this case." *In re Dynaco Corp.*, 162 B.R. 389, 396 (Bankr. D.N.H. 1993).  Because this result would be at fundamental odds to the rehabilitative purposes of chapter 11, the relief requested by the Motion is warranted. *Id.* at 394 (noting that "'it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible'" (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

29.     Simply put, the Debtors submit that, for the reasons set forth herein, immediate use of Cash Collateral in accordance with the Budget upon entry of the Interim Order is necessary to avert immediate and irreparable harm.

**B.      Section 363 of the Bankruptcy Code Authorizes the Use of Cash Collateral**

30.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides its consent, or (ii) the Court approves the use of cash collateral after notice and a hearing. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

31.     Here, *the Debtors understand that the Prepetition Agent and the Prepetition Lenders will consent to entry of the Interim Order*, thereby allowing the use of Cash Collateral pursuant to section 363(c)(2)(A) of the Bankruptcy Code.

32.     Furthermore, the Debtors have proposed appropriate forms of adequate protection. Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate

13

protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361. Although section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *E.g.*, *Resolution Trust Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. at 394 (citing 2 COLLIER ON BANKRUPTCY ¶ 361.01[1] at 361–66 (15th ed. 1993) for proposition that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

33.    The Debtors believe that the proposed adequate protection components described above are fair and reasonable. Indeed, the terms and conditions on which USA Discounters may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Interim Order is entered, USA Discounters will have working capital to continue to wind down its business and assets, and thereby provide an opportunity to maximize value for the benefit of all stakeholders. At the same time, the Prepetition Agent and the Prepetition Lenders will be adequately protected in a manner that they have negotiated in exchange for consenting to the use of Cash Collateral. Given the significant value that USA Discounters stands to lose in the event it is denied access to continued use of Cash Collateral, such protections are wholly appropriate and justified under the circumstances.

## VII.  INTERIM ORDER AND FINAL HEARING

34.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that

the Court set a date for the initial hearing that is as soon as practicable, and fix the time and date

prior to the Final Hearing for parties to object to the Motion being granted on a final basis.

35.     The urgent need to preserve USA Discounters' business, and avoid immediate and

irreparable harm to its estate, makes it imperative that USA Discounters be authorized to use the

Cash Collateral as of the Petition Date, pending the Final Hearing, in order to continue an orderly

wind-down and administer the Cases.  Without the ability to use Cash Collateral, USA

Discounters will be unable to meet its postpetition obligations and will be unable to fund its

working capital needs, thus causing irreparable harm to the value of its assets and ending the

Debtors' orderly liquidation efforts.  Accordingly, the Debtors respectfully request that, pending

the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and

provisions of the Interim Order be implemented and be deemed binding and that, after the Final

Hearing, the Final Order be approved in all respects and the terms and provisions of the Final

Order be implemented and be deemed binding.

## VIII.  NOTICE

36.     The Debtors will provide notice of this Motion to (collectively, the "Notice

Parties"): (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of

the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the

Prepetition Agent; (iv) the cash management banks with which USA Discounters maintains bank

accounts; (v) all parties who are known, after reasonable inquiry, to have asserted a lien,

encumbrance, or claim in the Prepetition Collateral; (vi) state attorney generals in states in which

the Debtors are doing business; (vii) the United States Attorney's Office for the District of

Delaware; (viii) the Internal Revenue Service; and (ix) all parties who have filed a notice of

15

appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is

required.

## IX.  NOTICE REGARDING THE FINAL HEARING

37.     No trustee, examiner, or statutory committee has been appointed in these Cases.

Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to

provide notice of the Final Hearing by serving, or causing to be served, by first class mail or

other appropriate method of service, a copy of the Interim Order on the Notice Parties.  The

Debtors respectfully request that such notice is sufficient and request that this Court find that no

further notice of the Final Hearing and Final Order is required.

*[Remainder of page intentionally left blank.]*

## X.  CONCLUSION

WHEREFORE, for the reasons set forth herein, in the Dorsey Declaration, and in the Sax

Declaration, the Debtors respectfully request entry of the Interim Order, and following the Final

Hearing, entry of the Final Order, granting the relief requested herein and such other and further

relief as the Court may deem just and appropriate.

Dated:  August 24, 2015

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neil (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email: ljones@pszjlaw.com
          joneil@pszjlaw.com
          crobinson@pszjlaw.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
Whitman L. Holt, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4023
Fax:    (310) 407-9090
Email: lbogdanoff@ktbslaw.com
          mtuchin@ktbslaw.com
          wholt@ktbslaw.com
          sgurvitz@ktbslaw.com

*[Proposed] Counsel to the Debtors and Debtors
in Possession*