**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (___)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING PAYMENT OF PREPETITION SALES, USE, PROPERTY, AND FRANCHISE TAXES AND SIMILAR TAXES AND FEES AND (II) AUTHORIZING BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS ISSUED AND ELECTRONIC PAYMENT REQUESTS MADE RELATING TO THE FOREGOING**

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc. ("Holdings"), and USA Discounters Credit, LLC ("Credit LLC"), the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 507(a)(8), and 541(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (I) authorizing, but not directing, the Debtors to pay certain prepetition taxes, including, sales and use taxes, property taxes, franchise taxes, and similar taxes and fees in the ordinary course of business, as the Debtors, in their sole discretion, deem necessary, (II) authorizing banks and other financial institutions (the "Banks") to honor and process check and electronic transfer requests related to the foregoing, and (III) granting related relief. In support of the Motion, the Debtors rely on the *Declaration of*

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

*Timothy W. Dorsey in Support of First Day Motions* (the "Dorsey Declaration") concurrently filed herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1.   The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.   Pursuant to Rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.   The statutory and legal predicates for the relief requested herein are sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II. BACKGROUND

4.   On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.   The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no statutory committee has been appointed in these Cases.

6.   As of the Petition Date, USA Discounters is engaged in the retail business and operates seven retail stores located in five different states, all of which use the "Fletcher's

Jewelers" brand. USA Discounters' business operations previously included twenty-four other retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and other consumer products, but all of the "USA Living" stores were closed in the months preceding the Petition Date.

7. USA Discounters' business was built on generating sales via consumer credit provided by USA Discounters through installment contracts or revolving contracts, with USA Discounters retaining and servicing the resulting customer receivables. As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million. USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract. USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date. Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

8. USA Discounters historically focused on serving members of the United States military and their families. Due to various financial and regulatory changes within the military, military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

9. The decline in the military member customer base coincides with increased challenges in the broader consumer retail space. Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché,

Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have commenced bankruptcy cases for the specific purpose of liquidating their business operations. Several other retail businesses – including RadioShack Corporation – have used the bankruptcy process to effect going concern sales of certain core business operations, although after substantially reducing their retail footprints.

10. In the face of this very challenging retail environment and external policy changes adversely affecting their business model, as well as defaults under USA Discounters' approximately $60 million secured credit facility (which matures in October 2015 in any event), the Debtors thoroughly considered the options available to maximize value for their stakeholders under the circumstances. After determining that USA Discounters would be unable to refinance or extend its outstanding secured credit facility, and after being unable to locate a going-concern buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11 bankruptcy cases. The relief sought in this Motion is intended to preserve value and facilitate USA Discounters' operations through this process and into the next phases of these Cases.

11. More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the Dorsey Declaration.

### III. RELIEF REQUESTED

12. By this Motion, the Debtors request that the Court enter an order, pursuant to Bankruptcy Code sections 105(a), 507(a)(8), and 541(d) and Bankruptcy Rules 6003 and 6004 (a) authorizing, but not directing, the Debtors to pay certain prepetition taxes, including, sales and use taxes, property taxes, franchise taxes, and similar taxes and fees in the ordinary course of business, as the Debtors, in their sole discretion, deem necessary, (b) authorizing the Banks to

honor and process check and electronic transfer requests related to the foregoing, and (c) granting related relief.

13. In the ordinary course of business, the Debtors incur or collect and remit certain taxes including sales, use, personal property, franchise, commercial activity, business and occupation, and various other taxes, fees, charges, and assessments (the "Taxes and Fees"). The Debtors remit such Taxes and Fees to various federal, state, and local taxing and other governmental authorities and/or certain municipal or governmental subdivisions or agencies of those states (the "Taxing Authorities") in connection with the operation of their business and the sale of products or services at store locations. The Taxing Authorities are set forth on **Exhibit B** hereto. The Taxes and Fees are paid monthly, quarterly, semi-annually, or annually to the respective Taxing Authorities, depending on the given Tax or Fee and the relevant Taxing Authority to which it is paid. As of the Petition Date, the Debtors estimate that they owe approximately $191,207 in unremitted Taxes and Fees, all of which is comprised of current tax obligations.

14. The Debtors seek authority to pay all prepetition Taxes and Fees in the ordinary course of business owed to the Taxing Authorities; provided that payments on account of Taxes and Fees that accrued, in whole or in part, prior to the Petition Date but were not in fact paid or processed prior to the Petition Date shall not exceed $215,000 in the aggregate.

15. The Debtors also request that all Banks on which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued or presented before or after the Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid.

## IV. BASIS FOR RELIEF

### A. Certain of the Taxes and Fees Are Not Property of the Debtors' Estates

16. The Debtors' payment of the Taxes and Fees is justified in large part because certain of these amounts are not property of the Debtors' estates pursuant to section 541(d) of the Bankruptcy Code. Specifically, section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section <u>only</u> to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d) (emphasis added).

17. Consistent with section 541(d) of the Bankruptcy Code, courts have held that certain types of taxes are not part of a debtor's estate. *See, e.g., Begier v. Internal Rev. Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *DuCharmes & Co., Inc. v. United States (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (per curiam) (same); *cf. In re Calabrese*, 689 F.3d 312, 321 (3d Cir. 2012) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax that is not released by bankruptcy discharge); *Shank v. Wash. State Dept. of Rev. (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (same); *DeChiaro v. N. Y. State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Rev. (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983) (same); *W. Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same).

18. Here, the Taxes and Fees constitute amounts held in trust, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities. To the extent these Taxes and Fees constitute "trust fund" taxes, they are not property of the Debtors' estates under

6

section 541(d) of the Bankruptcy Code. *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa. 1987) (funds held by the debtor to be paid for federal taxes are held in trust and are not property of the debtor's estate); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties was not property of debtor's estate). Because the Debtors do not have an equitable interest in such Taxes and Fees, the Debtors should be permitted to remit these Taxes and Fees to the Taxing Authorities as they become due, irrespective of the commencement of these Cases.

**B.     Payment of the Taxes and Fees Will Avoid Unnecessary Distractions**

19.     Any regulatory dispute or delinquency that impacts the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole and on the value of their estates. Specifically, the Debtors' failure to remit the Taxes and Fees could adversely affect the Debtors' business operations because, among other things (a) the Taxing Authorities could initiate audits of the Debtors or seek to prevent the Debtors from continuing their business and administering their estates, which, even if unsuccessful, would unnecessarily divert the Debtors' attention from the process of maximizing the value of their estates; (b) the Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay and pursue other remedies that will harm the estates; (c) some of the Taxing Authorities may seek to collect penalties, cancel franchises or other licenses, or undertake other unfavorable enforcement actions if the Debtors do not pay the Taxes and Fees; and (d) certain of the Debtors' directors, officers, and employees might be subject to personal liability, even if such a failure to remit such Taxes and Fees was not a result of malfeasance on their part, which would undoubtedly distract these key people from their duties related to the Debtors' restructuring. In fact, the Taxing Authorities may take such

actions regardless of these chapter 11 filings. *See, e.g.*, 11 U.S.C. §§ 362(b)(9) (permitting tax audits and assessments) and 362(b)(18) (allowing creation or perfection of liens for property taxes).

20. Accordingly, the Debtors respectfully request the authority to remit the Taxes and Fees in order to ensure that they and their directors, officers, and employees remain focused on operating their business and maximizing the value of their estates for the benefit of their creditors.

C. **Certain of the Taxes and Fees May Constitute Priority Claims**

21. The Debtors submit that authorizing the payment of the Taxes and Fees is in the best interests of their creditors and estates because substantially all of the Taxes and Fees constitute priority claims under Bankruptcy Code section 507(a)(8). As such, payment of the Taxes and Fees will not prejudice the rights of general unsecured creditors.

22. Moreover, to the extent that such claims are entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code, the respective Taxing Authorities may attempt to assess interest and penalties. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

23. Further, the failure to pay certain of the Taxes and Fees may adversely affect the Debtors' ability to maintain their good standing to operate in the jurisdictions in which they do business and to administer their estates for the benefit of their creditors.

24. In sum, payment of the Taxes and Fees is in the best interest of the Debtors and their estates and may reduce harm and administrative expense to the Debtors' estates.

8

D. **Payment of the Taxes and Fees Is Warranted Under the Doctrine of Necessity**

25. The Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity." *Id.* at 175-76.

26. The United States Court of Appeals for the Third Circuit recognized the doctrine of necessity in *In re Lehigh & New England Railway. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment." *Id.*; *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business while in chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

27. Application of the doctrine of necessity is justified when necessary to preserve the value of the estate for all stakeholders. *See Just for Feet*, 242 B.R. at 826 (finding that payment

9

of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit ... payment of creditors in full or at least proportionately"); 2 Collier on Bankruptcy ¶ 105.04[5][a] (16th ed. rev. 2015) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

28.   Here, the Debtors' payment of the Taxes and Fees is an exercise of sound business judgment and is necessary to maximize the value of the Debtors' estates for the benefit of their creditors. The Debtors operate a nationwide business, and any disputes that could adversely affect their ability to conduct business in a particular jurisdiction could have wide-ranging and negative effects on the Debtors' operations as a whole and their efforts to efficiently administer their estates and maximize distributions to their creditors. If the Debtors do not continue paying the Taxes and Fees when they come due on a timely basis, it is possible that

Taxing Authorities, or those parties who ordinarily collect the Taxes and Fees, may interfere with the Debtors' business and the efficient administration of the estates.

29. Similar relief is routinely granted by courts in this District. *See, e.g., In re Event Rentals, Inc.*, Case No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014) (Docket No. 43); *In re ATLS Acquisition, LLC*, Case No. 13-10262 (PJW) (Bankr. D. Del. Feb. 20, 2013) (Docket No. 41); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Jan. 30, 2013) (Docket No. 72); *In re THQ Inc.*, Case No. 12-13398 (MFW) (Bankr. D. Del. Dec. 20, 2012) (Docket No. 37); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Oct. 31, 2012) (Docket No. 173); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011) (Docket No. 42); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010) (Docket No. 54).[2]

### E. Processing of Checks and Electronic Fund Transfers Should be Authorized

30. The Debtors have sufficient funds to pay any amounts related to the Taxes and Fees in the ordinary course of business. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Taxes and Fees, as applicable. The Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Thus, the Debtors request that the Court authorize all applicable Banks to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the Taxes and Fees.

### V. IMMEDIATE RELIEF IS NECESSARY

31. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P.

---

[2] These orders will be provided upon request, and have not been included because they are too voluminous.

6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## VI. WAIVER OF ANY APPLICABLE STAY

32.  The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VII. NOTICE

33.  The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition Agent; (iv) the Banks; (v) the Taxing Authorities and (v) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

DOCS_DE:201394.1 88601/001

## VIII. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Dorsey Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated:  August 24, 2015

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email: ljones@pszjlaw.com
            joneill@pszjlaw.com
            crobinson@pszjlaw.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
Whitman L. Holt, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4023
Fax:    (310) 407-9090
Email: lbogdanoff@ktbslaw.com
            mtuchin@ktbslaw.com
            wholt@ktbslaw.com
            sgurvitz@ktbslaw.com

*[Proposed] Counsel to the Debtors and Debtors in Possession*

DOCS_DE:201394.1 88601/001