**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (___)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING MAINTENANCE, ADMINISTRATION, AND CONTINUATION OF CERTAIN CUSTOMER PROGRAMS

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc. ("Holdings"), and USA Discounters Credit, LLC ("Credit LLC" and, collectively with USA Discounters and Holdings, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing USA Discounters to maintain and administer customer-related programs as described in the Motion (collectively, the "Customer Programs") and honor prepetition obligations to customers related thereto in the ordinary course of business and in a manner consistent with past practices, (b) authorizing USA Discounters to continue, replace, implement, modify, and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further application to the Court, (c) authorizing banks and other financial institutions (the

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

"Banks") to honor and process check and electronic transfer requests related to the foregoing, and (d) granting related relief. In support of the Motion, the Debtors rely on the *Declaration of Timothy W. Dorsey in Support of First Day Motions* (the "Dorsey Declaration") concurrently filed herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II. BACKGROUND

4. On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no statutory committee has been appointed in these Cases.

2

6.  As of the Petition Date, USA Discounters is engaged in the retail business and operates seven retail stores located in five different states, all of which use the "Fletcher's Jewelers" brand. USA Discounters' business operations previously included twenty-four other retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and other consumer products, but all of the "USA Living" stores were closed in the months preceding the Petition Date.

7.  USA Discounters' business was built on generating sales via consumer credit provided by USA Discounters through installment contracts or revolving contracts, with USA Discounters retaining and servicing the resulting customer receivables. As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million. USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract. USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date. Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

8.  USA Discounters historically focused on serving members of the United States military and their families. Due to various financial and regulatory changes within the military, military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

9. The decline in the military member customer base coincides with increased challenges in the broader consumer retail space. Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché, Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have commenced bankruptcy cases for the specific purpose of liquidating their business operations. Several other retail businesses – including RadioShack Corporation – have used the bankruptcy process to effect going concern sales of certain core business operations, although after substantially reducing their retail footprints.

10. In the face of this very challenging retail environment and external policy changes adversely affecting their business model, as well as defaults under USA Discounters' approximately $60 million secured credit facility (which matures in October 2015 in any event), the Debtors thoroughly considered the options available to maximize value for their stakeholders under the circumstances. After determining that USA Discounters would be unable to refinance or extend its outstanding secured credit facility, and after being unable to locate a going-concern buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11 bankruptcy cases. The relief sought in this Motion is intended to preserve value and facilitate USA Discounters' operations through this process and into the next phases of these Cases.

11. More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the Dorsey Declaration.

## III. RELIEF REQUESTED

12. By this Motion, the Debtors request that the Court enter an order, pursuant to Bankruptcy Code sections 105 and 363(b) and Bankruptcy Rules 6003 and 6004, (a) authorizing USA Discounters to maintain and administer the Customer Programs and honor prepetition obligations to customers related thereto in the Debtors' discretion in the ordinary course of business and in a manner consistent with past practices; (b) authorizing USA Discounters to continue, replace, implement, modify, and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further application to the Court; (c) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and (d) granting related relief.

13. Maintaining the loyalty, support, and goodwill of USA Discounters' customers is critical to the Debtors' reorganization efforts. In short, USA Discounters must maintain positive customer relationships and a reputation for reliability to ensure that its customers continue to purchase products in the remaining "Fletcher's Jewelers" stores and make payments on existing accounts receivable during the pendency of these Cases. Achieving these goals is particularly important while operating in chapter 11. In the ordinary course of business, USA Discounters provides customers with certain Customer Programs that engender goodwill, maintain loyalty, increase USA Discounters' sales opportunities, and allow USA Discounters a comparative advantage over its competition. Specifically, the Customer Programs relate to USA Discounters' programs by which it offers Warranties and Debt Cancellation Programs (each as defined below), coupons, and other promotional offers to its customers, as well as processing customer purchases through the use of credit cards. USA Discounters believes that its ability to continue the Customer Programs and to honor its obligations thereunder in the ordinary course of business

is necessary to (i) retain its reputation for reliability, (ii) meet competitive market pressures, (iii) maintain positive customer relationships, and (iv) ensure customer satisfaction, all of which will maximize the probability that payments will be made to USA Discounters in accordance with the Customer Contracts (as defined in the Dorsey Declaration).

**A.    Warranties**

14.    In addition to selling goods, USA Discounters historically offered to sell its products with an extended warranty against defects for the original owner pursuant to separate warranty agreements ("Product Warranty"). The term of a Product Warranty typically runs through the term of the applicable Customer Contract. A separate jewelry warranty ("Jewelry Warranty") was also sold that is a "lifetime warranty" to make certain repairs to purchased jewelry (Product Warranty and Jewelry Warranty are, collectively, the "Warranties"). The cost of the Warranties for the customer was included as an item purchased and, in turn, the amount financed. Payment for the Warranties, therefore, is spread out over the term as part of the monthly charges due under the applicable Customer Contract. USA Discounters stopped selling Warranties for new customers in April 2015. Nevertheless, USA Discounters continued to honor its commitment to customers with existing Warranties by permitting them to continue and expand their warranty plans as part of any new purchases through USA Discounters' "add-on" purchase program (which effectively refinances the customer's preexisting purchases and Warranties into a combined arrangement that also includes the "add-on" items). The "add-on" purchase program itself was recently eliminated following closure of the remaining "USA Living" stores.

15.    As of August 1, 2015, there were approximately 20,625 open Product Warranty contracts and approximately 5,178 open Jewelry Warranty contracts, covering approximately $88 million worth of Receivables (as defined in the Dorsey Declaration). As of July 31, 2015,

DOCS_DE:201399.1 88601/001

USA Discounters had established an accounting reserve for claims under the Warranties of approximately $1.7 million, which is an estimate based on historical warranty repair costs combined with historical rates of warranty registrations and usage.

16.  USA Discounters seeks authority to continue to honor its outstanding Warranties during the pendency of the Cases. Performance of USA Discounters' obligations under the Warranties is critical to preserving the value of the Debtors' estates because customers likely will attempt to cease making payments on their Customer Contracts if their Warranties are not honored.

17.  The methods through which USA Discounters intends to honor the Warranties during these Cases and notwithstanding the contemplated store closures include (i) continuing to provide a call center at which customers can obtain authorizations for repairs and other information, (ii) directing customers to manufacturers or designated service centers for repairs (either in person or via the mail), (iii) providing other alternatives to repair or replace the item, and (iv) negotiating other consensual resolutions with individual customers.

18.  In connection with honoring the Warranties, USA Discounters from time to time owes amounts to third-party service providers, such as service centers that repair items covered by a Warranty (the "Warranty Service Providers"). Consistent with its intent to honor the Warranties during these Cases, USA Discounters intends to make payments to the Warranty Service Providers in the ordinary course of business. As of the Petition Date, USA Discounters is not aware of outstanding amounts owed to any Warranty Service Providers. Nevertheless, some Warranty Service Providers will provide invoices on a delayed or arrears basis. Thus, in an abundance of caution and in order to ensure that USA Discounters can continue to honor the Warranties, including obtaining any necessary repairs or similar services from Warranty Service

Providers, USA Discounters requests authority to pay prepetition amounts that may be owed to any Warranty Service Providers, but not to exceed $50,000 in the aggregate.

19.     In certain states in which USA Discounters does business, it is required by law to purchase bonds, set aside cash reserves, establish certificates of deposit, and/or establish and fund escrow accounts to ensure that USA Discounters is able to satisfy its potential obligations under the Warranties.  USA Discounters has purchased outstanding bonds in favor of the states of Georgia, Oklahoma, Texas, and Virginia (in the amounts of $100,000, $50,000, $100,000, and $100,000, respectively) from the Platte River Insurance Company.  The annual cost to renew these bonds is approximately $7,000.  The bonds have been renewed for 2015.  Also, as required by law in Oklahoma and Texas, USA Discounters has also set aside separate cash reserve accounts with Wells Fargo Bank, N.A. ("Wells Fargo") in the amounts of approximately $237,560 and $514,510, respectively, to fund potential Warranty obligations.  Similarly, pursuant to California law, USA Discounters has funded an escrow account with Wells Fargo in the amount of approximately $113,236.  Finally, pursuant to Texas law, USA Discounters has established with Wells Fargo an interest-bearing time-deposit account, renewable every 90 days, the current principal balance of which is approximately $250,711.  USA Discounters seeks authority to continue to maintain, renew, or establish existing or new bonds, cash reserves, certificates of deposit, and escrow accounts in the ordinary course of business in order to comply with state laws governing the Warranties.

**B.      Debt Cancellation Programs**

20.     In addition to Warranties, USA Discounters historically offered its customers the opportunity to buy debt cancellation contracts (the "Debt Cancellation Contracts").  The Debt Cancellation Contracts generally provide that the applicable customer's debt under its Customer Contract will be cancelled and forgiven in the event that (i) the product is destroyed by fire or

8

natural disaster; (ii) the product is stolen; or (iii) the customer dies. For installment contracts, the Debt Cancellation Contracts run through the term of the applicable installment contract, and the cost of the Debt Cancellation Contract is included in the amount financed. For revolving contracts, the Debt Cancellation Contracts run from month-to-month and the cost of the same is calculated monthly and included on each month's invoice for the ensuing month's coverage. USA Discounters stopped offering Debt Cancellation Contracts for new customers in April 2015. Customers with existing Debt Cancellation Contracts were permitted to renew them in connection with any new purchases made between April 2015 and the closure of the remaining "USA Living" stores.

21. As of August 1, 2015, there were approximately 19,722 open Debt Cancellation Contracts regarding installment contracts covering approximately $79,154,115 worth of gross debt. As of the July 31, 2015, USA Discounters had established an accounting reserve for Receivables write-offs under the Debt Cancellation Contracts of approximately $3.2 million, which is an estimate based on historical rates of debt forgiveness under the Debt Cancellation Contracts.

22. USA Discounters seeks authority to continue to honor its outstanding Debt Cancellation Contracts during the pendency of these Cases. Performance of USA Discounters' obligations under the Debt Cancellation Contracts is critical to preserving the value of the Debtors' estates. If USA Discounters does not honor the Debt Cancellation Contracts, relationships with customers may be damaged, customers may attempt to cease making payments under their Customer Contracts, and regulatory officers and agencies may raise concerns.

### C. Promotional Offers

23. USA Discounters offers various promotional offers to customers throughout the year (collectively, the "Promotions"). The Promotions are aimed at driving sales and maintaining market competitiveness. USA Discounters offers various in-store and online promotions that provide discounts to customers, such as "percentage off" promotions. The Promotions are similar to those routinely offered in the retail industry. USA Discounters seeks authority to continue offering these Promotions postpetition in the ordinary course of business.

### D. Credit Card and Other Payment Processors

24. In addition to cash and allotment payments, USA Discounters accepts credit card payments. In such cases, USA Discounters receives the net customer payment less any chargebacks, returns, and processing fees charged. The processing fees charged by each company vary, but are in the range of 1.6% to 2.96%. The fees owing to credit card companies are set off from the funds that are remitted to USA Discounters on a monthly basis. Maintaining use of the credit cards is essential to preserving the value of the Debtors' estates because a substantial portion of USA Discounters' sales are made using credit cards. USA Discounters seeks authority to, in its sole discretion, allow the credit card companies to continue to process customer payments, including deducting chargebacks, returns, and processing fees in the ordinary course of business.

### IV. BASIS FOR RELIEF

### A. Honoring Customer Program Commitments is Warranted under Sections 105(a) and 363(b) of the Bankruptcy Code

25. The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate." 11 U.S.C. § 363(b)(l). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*

26.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *Ionosphere Clubs*, 98 B.R. at 175. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity." *Id.* at 175-76.

27.     The United States Court of Appeals for the Third Circuit recognized the doctrine of necessity in *In re Lehigh & New England Railway. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or

11

material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

28. Accordingly, the Court has authority to authorize USA Discounters to continue the Customer Programs, and pay prepetition claims arising thereunder, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

29. The Customer Programs are standard in the retail industry. If USA Discounters is unable to honor or continue its Customer Programs, its ability to collect its Receivables, conduct further business, and generate sales will be severely hampered. On the other hand, continuing to administer the Customer Programs without interruption during the pendency of these Cases will help preserve USA Discounters' customer relationships and goodwill, which will in turn allow USA Discounters to maximize the value of its remaining Receivables, inventory, and other assets.

30. Moreover, failure to continue the Customer Programs may subject USA Discounters to potential liability for consumer deceptive trade practices. Most, if not all, of the states where USA Discounters conducts its business have enacted statutes declaring unlawful any deceptive trade practices by any business being conducted in that state. USA Discounters' customers expect that USA Discounters will honor the Customer Programs and rely on such representations when purchasing merchandise and participating in the Customer Programs. Thus, it is necessary for the Debtors to continue the Customer Programs in order to avoid potential liability for claims arising out of state consumer protection laws.

DOCS_DE:201399.1 88601/001

31.  Furthermore, USA Discounters' Warranty obligations to its customers appear to be entitled to priority treatment pursuant to Bankruptcy Code section 507(a)(7), which grants a seventh-level priority to:

> allowed unsecured claims of individuals, to the extent of $2,775 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(7). The purchase of a Warranty represents a "deposit ... of money in connection with the purchase ... of property, or the purchase of services, for the personal, family, or household use of such individual." *Id.* Unless this Motion is granted, such "deposits" may represent payment for goods or services "that were not delivered or provided." Thus, USA Discounters' customers who purchased the Warranty plans described above could be entitled to receive payment in full before payment of claims of general unsecured creditors. Accordingly, granting this Motion will not result in harm to general unsecured creditors.

32.  Courts in this district have granted relief similar to that requested herein. *See, e.g., In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (Docket No. 74); *In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (Docket No. 44); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (Docket No. 59); *In re Neb. Book Co., Inc.*, No. 11-12005 (PJW) (Bankr. D. Del. July 26, 2011) (Docket No. 227); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Jan 20, 2011) (Docket No. 39); *In re Constar Int'l Inc.*, No. 11-10109 (CSS) (Bankr. D. Del. Jan 13, 2011) (Docket No. 49).[2]

---

[2] Copies of these orders will be provided upon request, and were not included because they are too voluminous.

33.     The Debtors submit that the benefits conferred on the Debtors' estates by the Customer Programs outweigh the costs associated with the Customer Programs. Accordingly, the Debtors respectfully request the authority for USA Discounters to continue its Customer Programs and honor prepetition commitments related thereto, all in the Debtors' sole discretion. In addition, the Debtors respectfully request authority to continue, replace, implement, modify, and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further application to the Court.

**B.     Processing of Checks and Electronic Fund Transfers Should be Authorized**

34.     USA Discounters has sufficient funds to pay any amounts related to the Customer Programs in the ordinary course of business. Under USA Discounters' existing cash management system, USA Discounters has made arrangements to readily identify checks or wire transfer requests relating to the Customer Programs, as applicable. The Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Thus, the Debtors request that the Court authorize all applicable Banks to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the Customer Programs.

## V. IMMEDIATE RELIEF IS NECESSARY

35.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## VI. WAIVER OF ANY APPLICABLE STAY

36. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for USA Discounters to operate its business without interruption and to preserve value for the Debtors' estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VII. NOTICE

37. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition Agent; and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## VIII. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Dorsey Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated:  August 24, 2015

                                                  Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:   (302) 652-4400
Email: ljones@pszjlaw.com
       joneill@pszjlaw.com
       crobinson@pszjlaw.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
Whitman L. Holt, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4023
Fax:   (310) 407-9090
Email: lbogdanoff@ktbslaw.com
       mtuchin@ktbslaw.com
       wholt@ktbslaw.com
       sgurvitz@ktbslaw.com

*[Proposed] Counsel to the Debtors and Debtors in Possession*