**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (___)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) APPROVING THE DEBTORS' PROPOSED
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (II) PROHIBITING UTILITY COMPANIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICES, (III) APPROVING THE
DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc. ("Holdings"), and USA Discounters Credit, LLC ("Credit LLC"), the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving the Debtors' Proposed Adequate Assurance (as defined herein) of payment for future utility services, (ii) prohibiting Utility Companies (as defined herein) from altering, refusing, or discontinuing services, (iii) approving the Debtors' proposed procedures for resolving Adequate Assurance Requests (as defined

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

herein), and (iv) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the Petition Date (as defined herein) to consider approval of this Motion on a final basis. In support of the Motion, the Debtors rely on the *Declaration of Timothy W. Dorsey in Support of First Day Motions* (the "Dorsey Declaration") concurrently filed herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.  The statutory and other bases for the relief requested herein are Bankruptcy Code sections 105(a) and 366 and Bankruptcy Rules 6003 and 6004.

## II. BACKGROUND

4.  On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

2

5. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no statutory committee has been appointed in these Cases.

6. As of the Petition Date, USA Discounters is engaged in the retail business and operates seven retail stores located in five different states, all of which use the "Fletcher's Jewelers" brand. USA Discounters' business operations previously included twenty-four other retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and other consumer products, but all of the "USA Living" stores were closed in the months preceding the Petition Date.

7. USA Discounters' business was built on generating sales via consumer credit provided by USA Discounters through installment contracts or revolving contracts, with USA Discounters retaining and servicing the resulting customer receivables. As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million. USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract. USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date. Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

8. USA Discounters historically focused on serving members of the United States military and their families. Due to various financial and regulatory changes within the military,

3

military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

9. The decline in the military member customer base coincides with increased challenges in the broader consumer retail space. Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché, Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have commenced bankruptcy cases for the specific purpose of liquidating their business operations. Several other retail businesses – including RadioShack Corporation – have used the bankruptcy process to effect going concern sales of certain core business operations, although after substantially reducing their retail footprints.

10. In the face of this very challenging retail environment and external policy changes adversely affecting their business model, as well as defaults under USA Discounters' approximately $60 million secured credit facility (which matures in October 2015 in any event), the Debtors thoroughly considered the options available to maximize value for their stakeholders under the circumstances. After determining that USA Discounters would be unable to refinance or extend its outstanding secured credit facility, and after being unable to locate a going-concern buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11 bankruptcy cases. The relief sought in this Motion is intended to preserve value and facilitate USA Discounters' operations through this process and into the next phases of these Cases.

11. More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the Dorsey Declaration.

## III. RELIEF REQUESTED

12. By this Motion, the Debtors seek entry of interim and final orders (i) approving the Debtors' Proposed Adequate Assurance (as defined herein) of payment for future utility services; (ii) prohibiting Utility Companies (as defined herein) from altering, refusing, or discontinuing services; (iii) approving the Debtors' proposed procedures for resolving Adequate Assurance Requests (as defined herein); and (iv) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the Petition Date to consider approval of this Motion on a final basis.

### A. The Debtors' Utility Services and Utility Companies

13. In connection with the operation of its business and management of its properties, USA Discounters obtains electricity, natural gas, telephone, water, waste disposal, and other similar services (collectively, the "Utility Services") from several utility companies or brokers (collectively, the "Utility Companies"). A nonexclusive list of the Utility Companies and their affiliates that provide Utility Services to USA Discounters as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit C**.[2] The relief requested herein is requested with respect to all Utility Companies providing Utility Services to USA Discounters.

14. Uninterrupted Utility Services are essential to USA Discounters' ongoing business operations and the overall success of these Cases. USA Discounters' operations require electricity and gas for lighting, heating, and air conditioning. In addition to operating seven retail stores, USA Discounters maintains a corporate office responsible for ensuring the smooth

---

[2] The inclusion of any entity on, or the omission of any entity from, the Utility Services List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination. Further, the Debtors have endeavored to identify all of the Utility Companies and list them on **Exhibit C** hereto. However, inadvertent omissions may have occurred, and the omission from **Exhibit C** of any entity providing Utility Services to the Debtors shall not be construed as an admission, waiver, acknowledgement, or consent that section 366 of the Bankruptcy Code does not apply to such entity. If the Debtors identify any entity that was inadvertently excluded from **Exhibit C**, they will promptly provide such entity with a copy of either the interim or final order approving this Motion, if entered.

5

operations of the USA Discounters' business. USA Discounters' corporate office and stores thus require Utility Services such as telephone, internet, water, and waste disposal services to operate. Should any Utility Provider refuse or discontinue service, even for a brief period, USA Discounters' business operations could be severely disrupted. Accordingly, it is essential that the Utility Services continue uninterrupted during these Cases.

15.     On average, USA Discounters pays approximately $72,659.94 each month for third party Utility Services. In the aggregate, the Utility Companies currently hold approximately $1,018.25 in deposits from USA Discounters.

**B.     Proposed Adequate Assurance of Payment**

16.     USA Discounters intends to pay postpetition obligations owed to the Utility Companies in a timely manner from cash held by USA Discounters and cash generated in the ordinary course of business. The Debtors submit that these sources will provide sufficient liquidity to pay USA Discounters' Utility Service obligations.

17.     To provide additional assurance of payment, USA Discounters proposes to deposit into a segregated account $33,535.36 (the "Adequate Assurance Deposit"), which represents an amount equal to approximately two weeks of USA Discounters' average cost of Utility Services, calculated based on USA Discounters' average third party utility expenses over the 12 months ended July 31, 2015, taking into account recent prepetition store closures. The Adequate Assurance Deposit will be held in the segregated account for the duration of these Cases. The Debtors submit that the Adequate Assurance Deposit, in conjunction with USA Discounters' ability to pay for future Utility Services in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies in accordance with section 366 of the Bankruptcy Code.

18.     In addition, the Debtors seek authority to reduce the Adequate Assurance Deposit to the extent that it includes an amount that is already held by a Utility Company as a deposit.

C.     **Adequate Assurance Procedures**

19.     Notwithstanding the Proposed Adequate Assurance, the Debtors propose the following procedures under which a Utility Company may make additional requests for adequate assurance (the "Adequate Assurance Procedures"):

   a.     Any Utility Company that objects to the Debtors' Proposed Adequate Assurance must serve a request (an "Adequate Assurance Request") on (i) the Debtors, 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502, Attn: Tim Dorsey, Vice President; (ii) proposed counsel for the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, Thirty-Ninth Floor, Los Angeles, CA 90067, Attn: Lee R. Bogdanoff, Esq. and Michael L. Tuchin, Esq., and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Attn: Laura Davis Jones, Esq. and Colin R. Robinson, Esq.; (iii) counsel to any statutory committee appointed in these cases; (iv) counsel to the Prepetition Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. and One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998, Attn: Kevin J. Baum, Esq.; and (v) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (collectively, the "Notice Parties").

   b.     Any Adequate Assurance Request must be served on the Notice Parties and must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include a summary of USA Discounters' payment history relevant to

7

the affected account(s), including any security deposits or letters of credit; and (iv) explain why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

    c.    The Debtors are authorized to resolve, in their sole discretion after consultation with the Prepetition Agent and any official committee, any Adequate Assurance Request by mutual agreement with a Utility Company and without further order of the Court and, in connection with any such agreement, in their sole discretion, provide a Utility Company with alternative adequate assurance of payment, including cash deposits, prepayments, or other forms of security, without further order of the Court, if the Debtors believe such alternative assurance is reasonable.

    d.    If the Debtors are unable to consensually resolve an Adequate Assurance Request by mutual agreement within 14 days of receipt of the Adequate Assurance Request, the Debtors will seek a hearing with the Court (the "<u>Determination Hearing</u>") to determine the appropriate amount of adequate assurance required with respect to such Adequate Assurance Request. Pending resolution of such Adequate Assurance Request at the Determination Hearing, the Utility Company shall be prohibited from altering, refusing, or discontinuing any services to USA Discounters on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

20.    The Adequate Assurance Procedures set forth a streamlined process for Utility Companies to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing USA Discounters to continue its business operations uninterrupted.

**D.     Modifications to the Utility Service List**

21.     To the extent the Debtors identify additional Utility Companies or discontinue services from existing Utility Companies, the Debtors seek authority to add or remove parties from the Utility Services List. For any Utility Company that is subsequently added to the Utility Services List, the Debtors will serve such Utility Company with a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and will increase the Adequate Assurance Deposit by an amount equal to two weeks of USA Discounters' average cost of services from the added Utility Company. For any Utility Company that is subsequently removed from the Utility Services List, the Debtors will decrease the Adequate Assurance Deposit by an amount equal to two weeks of USA Discounters' average cost of services from the removed Utility Company. The Debtors request that the terms of any Utility Services order and the Adequate Assurance Procedures apply to any subsequently identified Utility Company.

## IV. BASIS FOR RELIEF

22.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366 (c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., Long Island Lighting Co. v. Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*, No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against

unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires ... 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'" (citations omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

23. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision regarding whether the Utility Company will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must 'focus upon the need of the utility for assurance, and ... require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (quoting *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)).

24. Here, the Utility Companies are adequately protected against any risk of nonpayment for future services. The Adequate Assurance Deposit, the Debtors' postpetition cash collateral stipulation, and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of USA Discounters' payment of its future obligations. Moreover, termination of the Utility Services could result in USA Discounters' inability to operate its business, to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321, 322 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would

have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

25.    Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("the plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are preserved under the Adequate Assurance Procedures. *See id.* at *5-6. The Utility Companies still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Company could make an extortionate, last-minute demand for adequate assurance that would force the USA Discounters to pay under the threat of losing critical Utility Services, or lose such services. *See id.* at *5.

26.    Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Indeed, similar procedures have been approved by courts in this district. *See, e.g.*, *In re The Wet Seal, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Feb. 5, 2015) (Docket No. 235); *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) (Docket

No. 135); *In re Dolan Co.*, Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (Docket No. 77); *In re FAH Liquidating Corp.*, Case No. 13-13087 (KG) (Bankr. D. Del. Dec. 16, 2013) (Docket No. 163); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013) (Docket No. 101); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Sept. 25, 2013) (Docket No. 272).[3]

27. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

### V. IMMEDIATE RELIEF IS NECESSARY

28. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

### VI. WAIVER OF ANY APPLICABLE STAY

29. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the

---

[3] These orders will be provided upon request, and have not been included because they are too voluminous.

Debtors seek in this Motion is necessary for USA Discounters to operate its business without interruption and to preserve value for the Debtors' estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VII. NOTICE

30.  Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition Agent; (iv) the Utility Companies; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

DOCS_DE:201400.1 88601/001

## VIII. CONCLUSION

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: August 24, 2015

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email:  ljones@pszjlaw.com
        joneill@pszjlaw.com
        crobinson@pszjlaw.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
Whitman L. Holt, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4023
Fax:    (310) 407-9090
Email:  lbogdanoff@ktbslaw.com
        mtuchin@ktbslaw.com
        wholt@ktbslaw.com
        sgurvitz@ktbslaw.com

*[Proposed] Counsel to the Debtors and Debtors in Possession*