## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (___)<br><br>(Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING CONTINUATION OF, AND PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH, VARIOUS INSURANCE POLICIES, AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS <u>RELATED THERETO</u>

USA Discounters, Ltd. ("<u>USA Discounters</u>"), USA Discounters Holding Company, Inc. ("<u>Holdings</u>"), and USA Discounters Credit, LLC ("<u>Credit LLC</u>"), the debtors and debtors in possession (the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>"), hereby move the Court (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew prepetition insurance policies in the ordinary course of business and pay prepetition obligations in respect thereof; (ii) authorizing banks and other financial institutions (collectively, the "<u>Banks</u>") to honor and process check and electronic transfer requests related to the foregoing; and (iii) granting related relief. In support of the Motion, the Debtors rely on the *Declaration of Timothy W. Dorsey in Support of First Day*

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

*Motions* (the "Dorsey Declaration") concurrently filed herewith.  In further support of the

Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2).  Venue of these Cases and the Motion in this district is proper under 28 U.S.C.

§§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules of Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors

consent to the entry of a final judgment or order with respect to the Motion if it is determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent

with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105,

363(b), and 364(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II. BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their business and manage their

property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

To date, no statutory committee has been appointed in these Cases.

6.      As of the Petition Date, USA Discounters is engaged in the retail business and

operates seven retail stores located in five different states, all of which use the "Fletcher's

2

Jewelers" brand. USA Discounters' business operations previously included twenty-four other retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and other consumer products, but all of the "USA Living" stores were closed in the months preceding the Petition Date.

7.      USA Discounters' business was built on generating sales via consumer credit provided by USA Discounters through installment contracts or revolving contracts, with USA Discounters retaining and servicing the resulting customer receivables. As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million. USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract. USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date. Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

8.      USA Discounters historically focused on serving members of the United States military and their families. Due to various financial and regulatory changes within the military, military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

9.      The decline in the military member customer base coincides with increased challenges in the broader consumer retail space. Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché,

Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have

commenced bankruptcy cases for the specific purpose of liquidating their business operations.

Several other retail businesses – including RadioShack Corporation – have used the bankruptcy

process to effect going concern sales of certain core business operations, although after

substantially reducing their retail footprints.

10.     In the face of this very challenging retail environment and external policy changes

adversely affecting their business model, as well as defaults under USA Discounters'

approximately $60 million secured credit facility (which matures in October 2015 in any event),

the Debtors thoroughly considered the options available to maximize value for their stakeholders

under the circumstances.  After determining that USA Discounters would be unable to refinance

or extend its outstanding secured credit facility, and after being unable to locate a going-concern

buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a

structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11

bankruptcy cases.  The relief sought in this Motion is intended to preserve value and facilitate

USA Discounters' operations through this process and into the next phases of these Cases.

11.     More detailed factual background regarding the Debtors and the commencement

of these Cases is set forth in the Dorsey Declaration.

### III.  RELIEF REQUESTED

12.     By this Motion, the Debtors request that the Court enter an order, pursuant to

Bankruptcy Code sections 105, 363(b), and 364(b) and Bankruptcy Rules 6003 and 6004

(i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew all

of their prepetition insurance policies in the ordinary course of business and pay all prepetition

obligations in respect thereof, including brokerage and administrative fees (collectively, the

"Insurance Policy Obligations"); (ii) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and (iii) granting related relief.[2]

A.    **Overview of the Insurance Policies**

13.    In connection with their business operations, the Debtors maintain multiple insurance policies (each an "Insurance Policy" and, collectively, the "Insurance Policies"). The Insurance Policies vary in amounts and types of coverage in accordance with prudent business practices, state and local laws governing the jurisdictions in which the Debtors operate, and various contractual obligations. The Insurance Policies include (i) property, (ii) commercial general liability, (iii) auto, (iv) umbrella, (v) jewelers block, (vi) executive risk, (vii) cyber security, and (viii) employed lawyers.[3] The Insurance Policies that are the subject of this Motion are listed in the schedule attached hereto as **Exhibit B** (the "Insurance Schedule").[4] For each Insurance Policy, the Insurance Schedule includes, among other things: (i) the corresponding insurance carrier (each an "Insurance Carrier", and collectively, the "Insurance Carriers"); (ii) the corresponding broker; (iii) the last four digits of the policy number; (iv) annual premium; and (v) an estimate of prepetition amounts owed.

14.    The total annual premiums under the current Insurance Policies are approximately $425,000. These premiums are paid to the relevant Insurance Carriers either as annual

---

[2]  Nothing in this Motion should be construed as an assumption of any executory contract or unexpired lease between the Debtors and any other party, nor should it be construed as a rejection of any executory contract or unexpired leases. The Debtors reserve their rights to contest the amount claimed to be due by any person or entity.

[3]  Contemporaneously herewith, the Debtors are filing a motion relating to the Debtors' employee compensation and benefits programs (the "Employee Motion"). The Employee Motion seeks, among other things, authority to continue to (i) provide various benefits, including applicable insurance coverage, for employee health and welfare programs, and (ii) administer their workers' compensation program and honor all obligations in connection therewith in the ordinary course of business. These programs and policies are not listed on the Insurance Schedule, and the maximum allowances for payment of prepetition insurance obligations listed in this Motion are exclusive of any amounts for which payment authority may separately be sought in the Employee Motion.

[4]  The Insurance Policies summarized on the Insurance Schedule are representative only and are not intended to restrict the Debtors from changing carriers or programs, or adding different types of insurance, in the reasonable exercise of the Debtors' discretion.

prepayments or as installment payments.  The estimated prepetition amount owing to the

Insurance Carriers is $0.  The Debtors seek authority to continue the Insurance Policies in the

ordinary course of business and, out of an abundance of caution, to pay prepetition premiums in

respect of the Insurance Policies in an amount not to exceed $5,000 in the aggregate.

**B.      Brokerage and Administrative Services**

15.      In connection with the procurement and maintenance of their Insurance Policies,

the Debtors obtain brokerage services from Willis Group.  Willis Group assists the Debtors in

obtaining comprehensive insurance for the Debtors' operations by, among other things, assisting

the Debtors with the procurement and negotiation of the Insurance Policies, and enabling the

Debtors to obtain those policies on advantageous terms and at competitive rates.  Historically,

the Debtors have indirectly paid (through the Insurance Carriers, from which Willis Group

receives commissions directly) Willis Group approximately $71,000 in the aggregate on an

annual basis for their services (the "Brokerage Fees").  As of the Petition Date, the Debtors

believe that they do not owe any amounts in respect of Brokerage Fees.  Out of an abundance of

caution, the Debtors seek authority to pay prepetition Brokerage Fees in an amount not to exceed

$5,000 in the aggregate.

## IV.  BASIS FOR RELIEF

**A.      Honoring the Insurance Policy Obligations is Warranted Under Section 363(b) of
the Bankruptcy Code**

16.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he

[debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b), courts require

only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi*

*Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding*

*Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*,

82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, No. 02-41729

(REG), 2003 WL 22316543, at \*30 (Bankr. S.D.N.Y. Mar. 4, 2003); *Comm. of Equity Sec.*

*Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).  Moreover,

"[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a

decision made arbitrarily or capriciously), courts will generally not entertain objections to the

debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-*

*Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale*

*v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the

presumptions of the business judgment rule on the merits is a near-Herculean task.").

      17.    The Debtors have satisfied the business judgment standard.  First, the coverage

provided under the Insurance Policies is essential for preserving the value of the Debtors' assets

and, in many instances, such coverage is required by various regulations, laws and contracts that

govern the Debtors' business operations.  Indeed, section 1112(b)(4)(C) of the Bankruptcy Code

provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the

public," is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C.

§ 1112(b)(4)(C).  Moreover, maintenance of insurance policies is required by the operating

guidelines established by the Office of the United States Trustee.  *See* 3 United States Trustee

Manual, § 3-3.2.3 (Oct. 1998) ("A debtor must obtain appropriate insurance coverage, and

documentation regarding the existence of the coverage must be provided to the Office of the

United States Trustee as early in the case as possible.").

      18.    Second, if the Debtors fail to perform their obligations under the Insurance

Policies, their coverage thereunder could be voided.  Such a disruption of the Debtors' insurance

coverage could expose the Debtors to serious risks, including but not limited to: (i) direct liability for the payment of claims that otherwise would have been payable by the Insurance Carriers; (ii) material costs and other losses that otherwise would have been reimbursed by the Insurance Carriers under the Insurance Policies; (iii) the loss of good standing certification in jurisdictions that require the Debtors to maintain certain levels of insurance coverage; (iv) the inability to obtain similar types of insurance coverage; and (v) higher costs for re-establishing lapsed policies or obtaining new insurance coverage. Any or all of these consequences could cause serious harm to the Debtors' business. Granting the relief requested herein will preserve the value of the Debtors' assets, thereby maximizing the value of the estates for all stakeholders. Accordingly, the Debtors have demonstrated sound business purposes for the relief requested.

19.    The Debtors may also need to renew or replace certain of the Insurance Policies during the course of these chapter 11 Cases, or enter into new policies. If the Debtors do not pay prepetition amounts owing in respect of the Insurance Policies, there is a risk that the Insurance Carriers will refuse to renew the Insurance Policies. The inability to renew Insurance Policies would put at risk the value of the Debtors' assets. Paying prepetition amounts owing in respect of the Insurance Policies will thus preserve the value of the Debtors' estates by facilitating the Debtors' ability to renew Insurance Policies or enter into new policies as needed.

20.    Although the Debtors believe that the renewal, modification, or new execution of the Insurance Policies would constitute ordinary course transactions not requiring Court approval, the Debtors nevertheless seek authority to continue to renew and modify the Insurance Policies in order to assure the Debtors' Insurance Carriers that the Debtors have full authority with respect to new or modified arrangements without the need to obtain further approval from the Court.

**B.     Honoring the Insurance Policy Obligations is Warranted Under the Doctrine of Necessity**

21.     The Court may authorize payment of prepetition claims under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" (also referred to as the "necessity of payment" rule). *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

22.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh and New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment". *Id.*; *accord In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *see also Just for Feet, Inc.*, 242 B.R. at 824-26 (noting that the Third Circuit permits debtors to pay prepetition claims that are essential to the continued operation of the business while in chapter 11); *Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.)*, No. 08-12136 BLS, 2009 WL 330993, at *3 (D. Del.

Feb. 10, 2009) (denying a stay pending appeal on the grounds that there is not a serious basis to challenge the doctrine of necessity in the Third Circuit).

23.    Application of the doctrine of necessity is justified when necessary to preserve the value of the estate for all stakeholders. *See Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit ... payment of creditors in full or at least proportionately"); 2 Collier on Bankruptcy ¶ 105.04[5][a] (16th ed. rev. 2015) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

24.    Honoring the Debtors' obligations with regards to the Insurance Policies is warranted under the doctrine of necessity. As described above, continuation of the Insurance Policies is essential to preserve the value of the Debtors' assets and minimize exposure to risk.

DOCS_DE:201375.1 88601/001

Furthermore, insurance coverage is required by the Office of the United States Trustee as well as various jurisdictions in which the Debtors operate.

**C.    Processing of Checks and Electronic Fund Transfers Should Be Authorized**

25.    The Debtors have sufficient funds to honor obligations in connection with the Insurance Policies in the ordinary course of business using available cash and expected cash flows from ongoing business operations.  The Debtors believe there is minimal risk that checks or wire transfer requests that this Court has not authorized will be inadvertently made.  Thus, the Debtors request that this Court authorize all applicable financial institutions to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Insurance Policies.

## V.  IMMEDIATE RELIEF IS NECESSARY

26.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## VI.  WAIVER OF ANY APPLICABLE STAY

27.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VII.  NOTICE

28.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition Agent; (iv) the Banks; (v) the Insurance Carriers; and (vi) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## VIII.  CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Dorsey Declaration, the

Debtors respectfully request that this Court enter an order, substantially in the form attached

hereto, granting the relief requested in the Motion and such other and further relief as is just and

proper.

Dated:  August 24, 2015

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email: ljones@pszjlaw.com
        joneill@pszjlaw.com
        crobinson@pszjlaw.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
Whitman L. Holt, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4023
Fax:    (310) 407-9090
Email: lbogdanoff@ktbslaw.com
        mtuchin@ktbslaw.com
        wholt@ktbslaw.com
        sgurvitz@ktbslaw.com

*[Proposed] Counsel to the Debtors and Debtors
in Possession*