# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (___)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES PURSUANT TO 11 U.S.C. § 365, AND (II) ABANDON ANY REMAINING PROPERTY LOCATED AT THE LEASED PREMISES NUNC PRO TUNC TO THE PETITION DATE

**LANDLORDS RECEIVING THIS LEASE REJECTION MOTION SHOULD LOCATE THEIR NAMES AND LEASES IN THE SCHEDULE OF LEASES ATTACHED HERETO AS EXHIBIT A**

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc. ("Holdings"), and USA Discounters Credit, LLC ("Credit LLC"), the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit B, pursuant to sections 105(a), 365, and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003, 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to (I) reject certain unexpired leases of non-residential real property for certain of the premises leased by the USA Discounters (collectively, the "Leased Premises"), which leases are set forth

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

on **Exhibit A** hereto (the "Rejected Leases"), effective as of the Petition Date (the "Rejection Effective Date"), and (II) abandon any remaining personal property and furniture, fixtures, and equipment ("Remaining Property") located at the Leased Premises, free and clear of all liens, claims, encumbrances, and interests or rights of third parties. In particular, the Rejected Leases subject to this Motion consist of twenty-seven leases that USA Discounters seeks to reject in connection with all of its "USA Living" store locations and warehouse locations, each of which USA Discounters closed and irrevocably surrendered to the landlords on or before August 21, 2015, *before* the commencement of these Cases. In support of the Motion, the Debtors rely on the *Declaration of Timothy W. Dorsey in Support of First Day Motions* (the "Dorsey Declaration") concurrently filed herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.  The statutory and other predicates for the relief requested herein are Bankruptcy Code sections 105, 365, and 554(a) and Bankruptcy Rules 6003, 6004, 6006, and 6007.

## II. BACKGROUND

4.  On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.  The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no statutory committee has been appointed in these Cases.

6.  As of the Petition Date, USA Discounters is engaged in the retail business and operates seven retail stores located in five different states, all of which use the "Fletcher's Jewelers" brand. USA Discounters' business operations previously included twenty-four other retail stores using the "USA Living" brand, which sold electronics, appliances, furniture, and other consumer products, but all of the "USA Living" stores were closed in the months preceding the Petition Date.

7.  USA Discounters' business was built on generating sales via consumer credit provided by USA Discounters through installment contracts or revolving contracts, with USA Discounters retaining and servicing the resulting customer receivables. As of August 15, 2015, the outstanding aggregate principal balance of USA Discounters' receivables is approximately $114 million. USA Discounters also sold warranty protection plans to cover defects associated with merchandise purchased from USA Discounters, with the warranty obligations typically running through the term of the corresponding installment credit contract. USA Discounters' sale of warranties to new customers was discontinued in April 2015, and USA Discounters ceased selling goods on credit shortly before the Petition Date. Although USA Discounters does not operate an e-commerce platform, it does maintain websites at which

3

potential customers could preview products available for purchase at USA Discounters' stores (www.usaliving.com and www.fletchersjewelers.com).

8. USA Discounters historically focused on serving members of the United States military and their families. Due to various financial and regulatory changes within the military, military members and their families have decreased their spending on various consumer products, which has had a negative effect on USA Discounters' resulting revenues.

9. The decline in the military member customer base coincides with increased challenges in the broader consumer retail space. Indeed, over the past several months, several clothing stores and other retailers – including Deb Stores Holding LLC, dELiA*s, Inc., Caché, Inc., Simply Fashion Stores Ltd., RUUM American Kid's Wear, and Anna's Linens – have commenced bankruptcy cases for the specific purpose of liquidating their business operations. Several other retail businesses – including RadioShack Corporation – have used the bankruptcy process to effect going concern sales of certain core business operations, although after substantially reducing their retail footprints.

10. In the face of this very challenging retail environment and external policy changes adversely affecting their business model, as well as defaults under USA Discounters' approximately $60 million secured credit facility (which matures in October 2015 in any event), the Debtors thoroughly considered the options available to maximize value for their stakeholders under the circumstances. After determining that USA Discounters would be unable to refinance or extend its outstanding secured credit facility, and after being unable to locate a going-concern buyer for the entire business, the Debtors concluded that the optimal path forward is to conduct a structured and orderly wind down of USA Discounters' affairs under the auspices of chapter 11 bankruptcy cases. The relief sought in this Motion is intended

to preserve value and facilitate USA Discounters' operations through this process and into the next phases of these Cases.

11. More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the Dorsey Declaration.

### III. RELIEF REQUESTED

12. The relief requested herein is warranted because (i) USA Discounters has ceased operations at the Leased Premises, (ii) the Debtors have no further use for the Leased Premises, (iii) on or before August 21, 2015, USA Discounters irrevocably and unequivocally surrendered each of the Leased Premises and abandoned any Remaining Property located at the Leased Premises, and (iv) since on or before August 21, 2015, the landlords in respect of the Leased Premises (the "Landlords") have been in sole possession of the Leased Premises.

13. The Rejected Leases constitute twenty-seven leases rejected by USA Discounters as part of the closure of all of its "USA Living" stores and warehouse locations on or before August 21, 2015. These closures occurred in three general waves.

14. *First*, on or before June 30, 2015, USA Discounters surrendered three leases in connection with the closure of three of its "USA Living" stores.[2] USA Discounters has ceased operations at these Leased Premises, has no further use for these Leased Premises, and on or before June 30, 2015, USA Discounters irrevocably surrendered each of these Leased Premises and abandoned any property remaining at these Leased Premises. In addition, since on or before

---

[2] USA Discounters entered into the lease dated as of January 21, 2015 for the Leased Premises located at 2165 Cunningham Drive, Unit 2166, Hampton, Virginia, with the intention that this Leased Premises would replace the Leased Premises located at 451 Oriana Road, Newport News, Virginia, for store number 180 (the Oriana Road premises was being occupied on a month-to-month basis as a holdover tenant). Subsequently, USA Discounters instead decided to close store number 180 at the end of its then monthly term, not to replace it, and to irrevocably surrender the lease with respect to the Cunningham Drive premises. USA Discounters never occupied, and does not intend to occupy, the Leased Premises located at 2165 Cunningham Drive, Unit 2166, Hampton, Virginia, and, on or before June 30, 2015, USA Discounters irrevocably surrendered this lease to the respective Landlord.

5

June 30, 2015, the Landlords in respect of these Leased Premises have been in sole possession of these Leased Premises.

15. *Second*, on or before July 31, 2015, USA Discounters surrendered fourteen leases in connection with the closure of fourteen more of its "USA Living" stores, as well as one warehouse.[3] USA Discounters has ceased operations at these Leased Premises, has no further use for these Leased Premises, and on or before July 31, 2015, USA Discounters irrevocably surrendered each of these Leased Premises and abandoned any property remaining at these Leased Premises, other than property that did not belong to USA Discounters (such as certain leased photocopy machines). In addition, since on or before July 31, 2015, the Landlords in respect of these Leased Premises have been in sole possession of these Leased Premises.

16. *Third*, on or before August 21, 2015, USA Discounters surrendered seven leases in connection with the closure of its seven remaining "USA Living" stores and two leases in connection with its two remaining warehouses. USA Discounters has ceased operations at these Leased Premises, has no further use for these Leased Premises, and on or before August 21, 2015, USA Discounters irrevocably surrendered each of these Leased Premises and abandoned any property remaining at these Leased Premises, other than property that did not belong to USA Discounters (such as certain leased copy machines). In addition, since on or before August 21, 2015, the Landlords in respect of these Leased Premises have been in sole possession of these Leased Premises.

17. The Debtors have provided sufficient notice to the Landlords of their irrevocable surrender of the Leased Premises before the Petition Date. First, on or before August 21, 2015 USA Discounters vacated each Leased Premises. Second, on various dates on or before August

---

[3] The USA Living store and its associated warehouse in Colorado Springs, CO, were separate buildings but were incorporated into a single lease.

21, 2015, USA Discounters sent to each Landlord, via overnight Federal Express, a letter informing the Landlords that the letter served as written notice that USA Discounters thereby surrendered the Leased Premises and unequivocally and irrevocably delivered possession to the applicable Landlord effective as of the date specified in the applicable letter.[4] The letters also stated that USA Discounters had irrevocably abandoned and forfeited to the Landlords any and all property located in the Leased Premises.[5] Finally, enclosed with each letter to the applicable Landlord were the keys for the respective Leased Premises, except with respect the Leased Premises located at 451 Oriana Road, Newport News, Virginia, for which the keys were previously turned over to the Landlord on June 26, 2015.

18. The Prepetition Agent has waived any rights it may have had in any Remaining Property as of the date and time of USA Discounters' abandonment and forfeiture thereof in favor of the Landlords.

19. As a result of the foregoing prepetition actions by USA Discounters, the Landlords had ample notice of USA Discounters' irrevocable and unequivocal prepetition surrender of the Leased Premises and associated abandonment of any Remaining Property at the Leased Premises. Immediate rejection therefore benefits the Landlords, who already have

---

[4] With respect to the Leased Premises for store number 105, located at 2770 Piney Green Road, Jacksonville, North Carolina, the lease, as amended by the First Lease Amendment dated as of September 15, 2013, provides for a month-to-month tenancy through and until June 30, 2015, at which point, absent continued occupancy by USA Discounters, the lease automatically terminates. *See* First Lease Amendment §5. USA Discounters vacated and irrevocably surrendered this Leased Premises on or before June 30, 2015, thus the lease expired by operation of its own terms before the Petition Date. Nevertheless, out of an abundance of caution, a letter unequivocally and irrevocably surrendering the Leased Premises was likewise sent to this Landlord, and the lease has been included among the Rejected Leases.

[5] In some locations, the letters to such landlords indicated that leased copiers left behind were the property of Wells Fargo Capital Leasing. The letters further provided point-of-contact information at the leasing company and stated that Wells Fargo Capital Leasing would be in touch with the landlord to retrieve the copiers.

possession of the Leased Premises, by allowing them to immediately use or re-let the Leased Premises without the uncertainty inherent in prolonged Court proceedings.

20.   Accordingly, by this Motion, the Debtors request that the Court enter an order pursuant to Bankruptcy Code sections 105, 365, and 554(a) and Bankruptcy Rules 6003, 6004, 6006, and 6007, authorizing the Debtors to (a) reject the Rejected Leases, effective as of the Rejection Effective Date, and (b) abandon any Remaining Property located at the Leased Premises on the Rejection Effective Date, free and clear of all liens, claims, encumbrances, and interests or other rights of third parties.

## IV. BASIS FOR RELIEF

### A.   Authority to Reject the Rejected Leases

21.   Section 365(a) of the Bankruptcy Code provides that a trustee or debtor in possession, "subject to the court's approval may ... reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992). "'This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.'" *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (quoting *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum, Inc.)*, 15 F.3d 60, 62 (5th Cir. 1994)).

22.   The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the trustee. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 – 40 (3d Cir. 1989) ("propriety of trustee's decision to reject contract measured under traditional 'business judgment test'" (citing *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)); *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 107 (3d Cir. 1990); *see also Computer Sales Int'l, Inc. v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings*, 290

B.R. 507, 511 (Bankr. D. Del. 2003). The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim, or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course").

23. Rejection of an executory contract or unexpired lease is appropriate where rejection of the contract would benefit the estate. *See Sharon Steel Corp.*, 872 F.2d at 39. The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Finance, Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("Under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

24. If the trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Fed. Mogul Global, Inc.*, 293 B.R. at 126. In applying the business judgment standard, courts show great deference to the trustee's or debtor's decisions to reject. *See e.g., Bildisco & Bildisco*, 465 U.S. at 523; *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code."); *In re Fed. Mogul Global, Inc.*, 293 B.R. at 126 (court should approve a debtor's decision to reject a contract unless the decision is the product of bad faith or a gross abuse of discretion); *In re Summit Land Co.*, 13 B.R. at 315 (absent extraordinary circumstances,

court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

25.  Pursuant to section 365(a) of the Bankruptcy Code, the Debtors seek to reject the Rejected Leases effective as of the Rejection Effective Date in order to avoid the possibility of incurring any additional expenses and costs related to the Rejected Leases. *See Bildisco & Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date). A court may permit such retrospective rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. *See In re Amber's Stores*, 193 B.R. 819, 827 (N.D. Tex. 1996); *see also Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37-38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection); *see also Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

26.  Courts in this jurisdiction have previously considered the question of retroactive rejection. *See In re Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW) (Bankr. D. Del. Feb. 6, 1998) (Docket No. 45). In *Namco*, this Court permitted retroactive rejection on the conditions that (a) the vehicles (and the keys thereto) subject to a lease were surrendered with an *unequivocal* statement of abandonment to the landlord or lessor, (b) the motion was filed and served on the landlord or lessor, (c) the official committee has consented to the relief requested in the motion, and (d) the debtor acknowledged that it would not have the right to withdraw the

motion prior to the hearing. Moreover, substantially similar relief, including the approval of retroactive lease rejection, has been granted in this district where a retail debtor surrendered non-residential leased premises to landlords prepetition. *See, e.g., In re Wet Seal, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Feb. 5, 2015) (Docket Nos. 239, 241, 242, 243).

27.   To the extent applicable, the Debtors will do all that is required for rejection of the Rejected Leases *nunc pro tunc* to the Rejection Effective Date. Specifically, service of this Motion is an unequivocal expression of the Debtors' intention to reject the applicable Leases. Furthermore, the Debtors (i) have ceased operating at, and vacated, the Leased Premises on or before August 21, 2015; (ii) have served notice of this Motion on all of the Landlords on the date hereof; and (iii) will not withdraw any of the Rejected Leases from this Motion absent the consent of the respective Landlord. To date, no official committee has been appointed in these Cases by the United States Trustee.

28.   Here, the Debtors seek to reject the Rejected Leases based on the belief that the Rejected Leases are, and, absent rejection, will continue to be, a burden on the Debtors' estates. USA Discounters ceased operating at the Leased Premises on or before August 21, 2015 and has no further use for the Leased Premises. The Rejected Leases no longer provide any economic benefit to the Debtors. Additionally, the Debtors have determined, in their reasonable business judgment, that there is no net benefit that can be realized from an attempt to market and assign the Rejected Leases, and the Debtors do not believe that the value of any Rejected Lease will increase in the immediate future. As a result, the Debtors have determined that rejection of the Rejected Leases is in the best interest of the Debtors' estates and creditors. For all these reasons, the Debtors submit that rejection of the Rejected Leases as of the Rejection Effective Date is in

the best interests of the Debtors' estates, creditors, and other parties in interest. Accordingly, rejection of the Rejected Leases *nunc pro tunc* to the Rejection Effective Date is appropriate.

29. The Debtors may have claims against the Landlords arising under, or independently of, the Rejected Leases. The Debtors do not waive any such claims by the filing of the Motion or by the rejection of the Rejected Leases.

**B. Authority to Abandon any Remaining Property**

30. The Debtors also seek to abandon any Remaining Property located at the Leased Premises as of the Rejection Effective Date as is, where is, and in accordance with section 554(a) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests or other rights of third parties. Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (stating that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim"). The Debtors believe that the costs associated with moving, storing, and then liquidating any Remaining Property at the Leased Premises will likely approach or exceed the value of such assets. Accordingly, the Debtors believe that the Remaining Property at the Leased Premises has inconsequential value to the Debtors' estates and should be abandoned as of the Rejection Effective Date. The Prepetition Agent has waived any rights it may have had in any Remaining Property as of the date and time of USA Discounters' abandonment and forfeiture thereof in favor of the Landlords.

**V. NOTICE**

31. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims

on a consolidated basis against the Debtors; (iii) the Prepetition Agent; (iv) the Landlords in respect of the Rejected Leases; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank.]*

## VI. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Dorsey Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated:  August 24, 2015

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email: ljones@pszjlaw.com
         joneill@pszjlaw.com
         crobinson@pszjlaw.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
Whitman L. Holt, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4023
Fax:    (310) 407-9090
Email: lbogdanoff@ktbslaw.com
         mtuchin@ktbslaw.com
         wholt@ktbslaw.com
         sgurvitz@ktbslaw.com

*[Proposed] Counsel to the Debtors and Debtors in Possession*

DOCS_DE:201401.1 88601/001