**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (CSS)<br><br>(Joint Administration Requested) |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) EMPLOY AND RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC TO PROVIDE THE DEBTORS A CHIEF EXECUTIVE OFFICER, CHIEF FINANCIAL OFFICER, AND CERTAIN ADDITIONAL PERSONNEL, AND (II) DESIGNATE JOSEPH J. SCIAMETTA AS CHIEF EXECUTIVE OFFICER AND LAURENCE SAX AS INTERIM CHIEF FINANCIAL OFFICER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

USA Discounters, Ltd. ("USA Discounters"), USA Discounters Holding Company, Inc. ("Holdings"), and USA Discounters Credit, LLC ("Credit LLC"), the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby apply to the Court (the "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the Debtors to (i) employ and retain Alvarez & Marsal North America, LLC ("A&M") to provide the Debtors with a Chief Executive Officer ("CEO"), a Chief Financial Officer ("CFO"), and certain additional authorized representatives of A&M and its professional service provider affiliates to assist the CEO and CFO (collectively, "Additional Personnel"), and (ii) designate Joseph J. Sciametta as CEO and Laurence Sax as CFO, in each case *nunc pro tunc* to the Petition Date. In support of this Application, the Debtors rely on the *Declaration of Joseph J. Sciametta*, attached hereto as **Exhibit B** (the "Sciametta Declaration"). In further support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The statutory and other predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2016-2.

## II. RELIEF REQUESTED

4. The Debtors seek entry of the Order, effective *nunc pro tunc* to the Petition Date, authorizing the Debtors to (i) employ and retain A&M to provide the Debtors with a CEO and a CFO as well as the Additional Personnel to assist the CEO and CFO, and (ii) designate Mr. Sciametta as CEO and Mr. Sax as CFO (together with the Additional Personnel, the "Engagement Personnel").

## III. BACKGROUND

5. On August 24, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

6. No request for the appointment of a trustee or examiner has been made in these chapter 11 Cases, and no committees have been appointed or designated.

7. The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the *Declaration of Timothy W. Dorsey in Support of First Day Motions* (the "First Day Declaration"), which is fully incorporated herein by reference.

### IV. RETENTION OF A&M

#### A. Qualifications of A&M

8. In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates. The Engagement Personnel are intimately familiar with the Debtors' business and are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

9. The Engagement Personnel specialize in interim management, turnaround consulting, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted toward maximizing the value of a Debtor's assets and recoveries to creditors, including developing or validating forecasts and business plans; monitoring and managing cash, cash flow, and creditor relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

10. Further, A&M has provided similar services and personnel in recent cases in this District. *See, e.g., In re Exide Technologies*, No. 13-11482 (KJC) (Bankr. D. Del. Jun. 10, 2013); *In re School Specialty, Inc.*, No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011).

11. Mr. Sciametta has the requisite experience to serve as CEO. Since June 15, 2015, Mr. Sciametta has served as the Debtors' Chief Executive Officer. Prior to that, Mr. Sciametta was recently Chief Restructuring Officer of a mid-sized manufacturing and recycling company during its 'out-of-court' restructuring, and was Treasurer of Lehman Brothers Holdings Inc. In addition, he served in an interim management or advisory role to Aleris International, Interstate Bakeries Corporation, Fedders Corporation, and various other companies during their chapter 11 proceedings. Mr. Sciametta has also advised various secured lenders as creditors during the chapter 11 proceedings of portfolio companies.

12. Mr. Sax has the requisite experience to serve as CFO. Since October 10, 2013, Mr. Sax served as the Debtors' Interim Chief Financial Officer. Previously, Mr. Sax served as interim CFO for Z Wireless, a 300 store electronics retailer, and as interim CFO for Derek Lam, a luxury clothing designer, wholesaler, and retailer. Additionally, Mr. Sax has advised numerous debtors during Chapter 11 proceedings, including Finlay Enterprises, a 700 store jewelry retailer, Pierre Foods, a multi-state food manufacturer, and Orchard Brands, a multi-brand catalog and online retailer.

13. The Engagement Personnel likewise are intimately familiar with the Debtors' business, financial affairs, and capital structure. On October 10, 2013, A&M and its professional

service provider affiliates (collectively, "<u>A&M and Affiliates</u>"), under an agreement with A&M's affiliate, Alvarez & Marsal Private Equity Performance Improvement Group, LLC, provided myriad financial consulting and/or interim management services for the Debtors, many of which relate to the issues and needs in these Cases. In addition to the services of Mr. Sax as CFO, numerous A&M and Affiliate resources were also engaged by the Debtor to oversee the management of the Debtor's marketing and sales functions, including the assumption of the role of Interim Revenue Officer. On May 1, 2014, the October 10, 2013 agreement was amended to name Jeff Feinberg as the Debtors' Chief Executive Officer. On June 15, 2015, the October 10, 2013 engagement letter, as amended, was assigned to A&M and was amended and restated to name Mr. Sciametta as CEO.

14. As a result of this relationship, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of these Cases. A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these Cases. Accordingly, the Debtors submit that the retention of A&M and the designation of Mr. Sciametta as CEO and Mr. Sax as CFO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

**B.    Scope of Services**

15. Subject to approval by the Court, the Debtors propose to retain A&M to provide the Engagement Personnel on the terms and conditions set forth in the engagement letter, dated June 15, 2015 (which letter supersedes the previously executed engagement letters, dated

October 10, 2013 and May 1, 2014), attached hereto as **Exhibit C** (the "Engagement Letter"),[2] except as otherwise explicitly set forth herein or in any order granting this Application.

16. Generally, the Engagement Personnel will support the Debtors with respect to the following matters:

    a. The CEO shall perform all normal and customary duties required of the CEO.

    b. The CFO shall provide all normal and customary duties required of the CFO.

    c. In addition the Debtors expect that the Engagement Personnel shall perform such other services as requested or directed by the board of the directors of Holdings (the "Board") and agreed to by A&M including but not limited to the following:

        i. assisting in the development of an orderly plan of liquidation;

        ii. assistance in the development and management of a 13-week cash flow forecast;

        iii. assisting in the preparation of reports and liaising with constituents;

        iv. assisting in the discussions with, and providing information to potential investors, secured lenders, official committees, and the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") as deemed necessary and appropriate by the Debtors;

        v. assisting the overall financial reporting division in managing the administrative requirements of the Bankruptcy Code, including postpetition reporting requirements and claim reconciliation efforts;

        vi. assisting the Debtors and their other advisors in analyzing any strategic alternatives for maximizing the value of their assets;

---

[2] The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

vii.      serving as the principal contact with the Debtors' key constituents/creditors with respect to financial and operational matters; and

viii.      performing such other services in connection with these chapter 11 proceedings as reasonably requested or directed by the Board, consistent with the role played by A&M in this matter and not duplicative of services being performed by other professionals in these proceedings.

17. As set forth in the Engagement Letter, the Engagement Personnel shall report to the Board and will make recommendations to and consult with the Board. The Engagement Personnel will continue to be employed by A&M and, while rendering services to the Debtors, will continue to work with other personnel at A&M in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Personnel pursuant to this Application. These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete an orderly wind down of the business. With respect to the Debtors, the Engagement Personnel shall operate under the direction of the Board, and A&M shall have no liability to the Debtors for any acts or omissions of the Engagement Personnel related to the performance or nonperformance of services at the direction of the CEO or the Board and consistent with the requirements of the Engagement Letter and Order other than for any acts of intentional misconduct on the part of the Engagement Personnel.

### C. A&M's Disinterestedness

18. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Sciametta Declaration, A&M: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the United States Trustee; and (b) does not hold any interest adverse to the Debtors' estates.

19. Although the Debtors respectfully submit that the retention of A&M is not governed by section 327 of the Bankruptcy Code, the Sciametta Declaration discloses, among other things, any relationship that A&M, Mr. Sax, Mr. Sciametta, or any other individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to A&M.

20. In addition, as set forth in the Sciametta Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts between the Debtors, the Engagement Personnel, or other significant parties in interest.

### D. Terms of Retention

21. As set forth in the Engagement Letter, the Debtors have agreed, among other things, to: (a) compensate and reimburse A&M for services provided and expenses incurred by the Engagement Personnel; and (b) indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and provide such persons insurance coverage under the Debtors' director and officer liability insurance policy.

1. **Compensation and Expenses.**

22. In accordance with the terms of the Engagement Letter, A&M will be paid by the Debtors for the services of the Engagement Personnel at their customary hourly billing rates with the exception of the CEO and CFO. A&M and the Debtors have agreed that the Debtors will pay A&M a flat rate of $75,000 per 28 day period in return for the services rendered to the Debtors by the CEO[3] and $108,000 per 28 day period for the services rendered to the Debtors by the CFO. The current hourly billing rates for Additional Personnel, based on the position held by such Additional Personnel at A&M, are subject to the following ranges:

a. Managing Director    $750-950

b. Director             $550-750

c. Analyst/Associate    $350-550

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

23. In addition to compensation for professional services rendered by Engagement Personnel, A&M will seek reimbursement for reasonable and necessary expenses incurred in connection with these Cases, including, but not limited to travel, lodging, messenger, and telephone charges. All fees and expenses due to A&M will be billed on a monthly basis, or more frequently as agreed to between A&M and the Debtors, as further set forth in the Engagement Letter.

2. **Indemnification.**

24. As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter (including the indemnification agreement attached to and made a part of the Engagement Letter (the

---

[3] The fee for the CEO was initially set in the Engagement Letter based on the assumption of a part time role.

"Indemnification Agreement")), the Debtors have agreed to (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification extended to the Debtors' officers and directors and to cover such Engagement Personnel under the Debtors' director and officer liability policy, and (b) indemnify and hold harmless A&M, its affiliates, and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors (collectively, the "Indemnified Parties") under certain circumstances.[4] The rights to indemnification shall survive the closing of these Cases or any cases into which they may be converted.

25. The Debtors believe the indemnity provisions are reasonable terms and conditions of A&M's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and A&M at arm's-length and in good faith. A&M and the Debtors believe that the indemnification provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to A&M and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best interests of the Debtors, their

---

[4] The indemnification provisions generally provide that the Debtors will indemnify and hold harmless A&M and the other Indemnified Parties (as defined in the Indemnification Agreement) from and against any losses, claims, damages, liabilities, penalties, obligations, and expenses, including the costs for counsel and others in investigating, preparing, or defending any action or claim caused by, relating to, based upon, or arising out of the Indemnified Party's acceptance of or the performance or nonperformance of their obligations under the Engagement Letter. Notwithstanding anything to the contrary contained in the Engagement Letter or the Indemnification Agreement, the Debtors and A&M have agreed, subject to the Court's approval of this Application, that in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Agreement if the Debtors, their estates, or any statutory committee appointed in these chapter 11 cases assert a claim against an Indemnified Person and the Court determines by final order that such claim arose out of the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person.

10

estates, and creditors in light of the fact that the Debtors require A&M's services to successfully wind down their business.

E.    **Fees and Reporting**

26.    If the Court approves the relief requested herein, A&M will be retained to provide the Debtors with the Engagement Personnel, Mr. Sciametta will be designated as CEO, and Mr. Sax will be designated as CFO pursuant to section 363 of the Bankruptcy Code. Because A&M is not being employed as a professional under section 327 of the Code, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, A&M will file with the Court, and provide notice to the U.S. Trustee and all official committees (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed. In addition A&M will file with the Court and provide to the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report will include the names and tasks filled by all Engagement Personnel involved in this matter. The Staffing Report (and A&M's staffing for this matter) will be subject to review by the Court if so requested by any of the Notice Parties.

27.    Given the numerous issues that the Engagement Personnel may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services in engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

F.    **Dispute Resolution Procedures**

28.    The Debtors and A&M have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the Engagement Personnel to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the United States District Court for the District of Delaware (the "District Court") (if the reference is withdrawn); (b) A&M, the Debtors, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in **Exhibit D** attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtors seek approval of these dispute resolution procedures by the Court. Further, A&M and the Debtors have agreed not to raise or assert any defense, based upon jurisdiction, venue, abstention, or otherwise, to the jurisdiction and venue of the Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## V. BASIS FOR RELIEF

**A.    Employment and Retention of A&M Is Justified Under Bankruptcy Code Section 363(b)**

29.    The Debtors seek authorization to employ and retain A&M and to appoint Mr. Sciametta as CEO and Mr. Sax as CFO pursuant to section 363 of the Bankruptcy Code, in each case *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

30.    Under applicable case law in this and other circuits, if a debtor's proposed use of property pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (section 363(b) gives the court "broad flexibility" to make payments outside of ordinary course of business as long as the debtor articulates a business justification); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

31.  The retention of A&M and its professionals is a sound exercise of the Debtors' business judgment. As detailed above, Mr. Sciametta and Mr. Sax each have extensive experience as senior officers and as advisors for many troubled companies. The Debtors believe that the Engagement Personnel will provide services that will benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of A&M is appropriate and in the best interests of the Debtors and their estates and creditors.

32.  The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. *See, e.g., In re School Specialty, Inc.*, No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011); *In re Trico Marine Services, Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct, 6, 2010); *In re Orleans Homebuilders Inc.*, No. 10-10684 (PJW) (Bankr. D. Del. Apr. 6, 2010); *In re Hines Horticulture, Inc.*, No. 08-11922 (KJC) (Bankr. D. Del. Oct. 1, 2008); *In re Powermate Holding Corp.*, No. 08-10498 (Bankr. D. Del. Apr. 15, 2008).

B.  **Employment and Retention of A&M Is Justified Under Bankruptcy Code Section 105(a)**

33.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The retention of the Engagement Personnel is necessary to the Debtors' efforts to efficiently

administer these Cases and successfully wind down their business. As such, the relief requested herein will allow the Debtors to maximize the value of these estates for all stakeholders.

34. Based upon the foregoing, the Debtors submit that the retention of A&M, and the designation of Joseph J. Sciametta as the Chief Executive Officer and Lawrence Sax as the Chief Financial Officer on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these Cases.

## VI. NOTICE

35. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition Agent; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the office of the attorneys general for the states in which the Debtors operate; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VII. NO PRIOR REQUEST

36. No prior request for the relief sought in this Application has been made to this or any other court.

## VIII. CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: August 26, 2015

Respectfully submitted,

USA Discounters, Ltd., *et al.*, Debtors and Debtors in Possession

_____
Timothy Dorsey
Vice President