### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>USA DISCOUNTERS, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11755 (CSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 5** |

### INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of debtor and debtor in possession, USA Discounters, Ltd. (the "Debtor"), and its two affiliated debtors (the "Affiliated Debtors") for entry of this interim order (this "Interim Order"):   (a) authorizing the Debtor to use the Cash Collateral as defined herein; (b) providing adequate protection with respect to the diminution in value, if any, of the interests of the Secured Parties (as defined below) as may result from the use of the Cash Collateral to the extent set forth herein; (c) modifying the automatic stay to the extent set forth herein; (d) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") regarding granting the relief requested in the Motion on a final basis pursuant to the final order (the "Final Order"); and (e) granting related relief;

The Court having considered the Motion, the *Declaration of Timothy W. Dorsey in Support of First Day Motions*, the *Declaration of Laurence Sax in Support of Cash Collateral Motion*, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on August 26, 2015 (the "Interim Hearing"); and notice of the Interim Hearing having been given

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: USA Discounters, Ltd. (5123); USA Discounters Holding Company, Inc. (8192); and USA Discounters Credit, LLC (3128). The Debtors' address is 6353 Center Drive, Building 8, Suite 101, Norfolk, Virginia, 23502.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtor, its estate, and its creditors, and equity holders, and essential for the maximization of the assets of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:**

A.      Petition Date.  On August 24, 2015 (the "Petition Date"), the Debtor and the Affiliated Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code.  The chapter 11 case filed by USA Discounters is referred to herein as the "Case" and together with the chapter 11 cases filed by the Affiliated Debtors are hereafter collectively referred to as the "Cases".

B.      Debtor in Possession.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

C.      Jurisdiction and Venue.  This Court has jurisdiction over these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.

§ 157(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

D.      Creditors' Committee.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.      Debtor's Representations.  Without prejudice to the rights of any other party, but in each case subject to the limitations contained in Paragraph 4 below, the Debtor represents, admits, stipulates, and agrees (collectively, the "Debtor's Stipulations") as follows:

(i).      Cash Collateral.  Any and all of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral (as defined herein) existing as of the Petition Date, and the proceeds of any of the foregoing is the Secured Parties' (as defined herein) cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(ii).      Prepetition Financing Documents.  The Debtor is a party to that certain Loan and Security Agreement, dated as of October 3, 2012 (as amended, supplemented, or modified prior to the date hereof, including on July 24, 2013, September 30, 2014, and June 24, 2015, the "Prepetition Loan Agreement," and together with the Credit Documents, as defined in the Prepetition Loan Agreement, the "Prepetition Credit Documents") by and among USA Discounters, Ltd., as Borrower; Wells Fargo Bank, N.A., as agent (in such capacity, the "Prepetition Agent"); and the financial institutions a party thereto as lenders (collectively, the

3

"Prepetition Lenders" and, together the Prepetition Agent, the "Secured Parties"), in the original principal amount of $85,000,000.00.

(iii).    Prepetition Obligations Amount. As of the Petition Date, the outstanding principal amount of all Obligations (as defined in the Prepetition Loan Agreement) owing by the Debtor to the Secured Parties under and in connection with the Prepetition Credit Documents was approximately $59,983,291, together with all accrued and accruing interest, charges, fees, costs and expenses (including attorneys' fees and legal expenses) with respect to the Prepetition Credit Documents (collectively, the "Secured Obligations"). The Secured Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtor and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and nonavoidability of any of the Secured Obligations.

(iv).    Prepetition Liens and Collateral.    As of the Petition Date, the Prepetition Obligations were secured pursuant to the Prepetition Credit Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens (the "Prepetition Liens") granted by the Debtor to the Prepetition Agent, for the benefit of itself and the other Secured Parties, upon the Collateral (as defined in the Prepetition Loan Agreement, hereafter the "Prepetition Collateral"). The Prepetition Liens (i) are valid, binding, perfected, and enforceable liens and security interests on all of the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) are subject and/or subordinate only to (x) the Carve-Out (as defined herein)

4

and (y) any validly perfected and unavoidable liens that exist on the Petition Date and are senior to

the applicable Prepetition Liens under applicable non-bankruptcy law, and (iv) constitute the legal,

valid, unavoidable and binding obligation of the Debtor, enforceable in accordance with the terms

of the Prepetition Credit Documents.

(v).    Adequate Protection for Secured Parties.  As a result of the Debtor's authorization

to use the Cash Collateral, the use, sale or lease of the other Prepetition Collateral, and the

imposition of the automatic stay, the Secured Parties are entitled to receive adequate protection

pursuant to sections 361, 362, and 363 of the Bankruptcy Code for and solely to the extent of any

decrease in the value of their respective interests in the Prepetition Collateral (including the Cash

Collateral) resulting from the automatic stay or from the Debtor's use, sale, lease of the Prepetition

Collateral (including the Cash Collateral), or otherwise during the Case.  As adequate protection,

the Secured Parties will receive the adequate protection described in this Interim Order (including

the adequate protection set forth in Paragraph 8 hereof).  In light of such adequate protection, each

of the Secured Parties has consented to the Debtor's use of the Cash Collateral, solely on the terms

set forth in this Interim Order.  The adequate protection provided herein and other benefits and

privileges contained herein are consistent with and authorized by the Bankruptcy Code and are

necessary to obtain such consent.

(vi).    No Claims. Subject to entry of the Final Order, the Debtor, the Affiliated Debtors,

on behalf of each of them and their respective estates and all of their past, present and future

predecessors, successors, heirs, subsidiaries and assigns (collectively, the "Releasors") agree that

they hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims,

causes of action, defenses, or setoff rights of any kind against the Prepetition Agent or any of the

Prepetition Lenders, or their respective officers, directors, equity holders, members, shareholders

5

and affiliates. Subject to entry of the Final Order, the Releasors hereby forever waive and release any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against either the Prepetition Agent, each of the Prepetition Lenders, and each of their respective officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultant, agents, and other representatives (including their respective officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultant, agents, and other representatives), whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

(vii).    Section 552(b); Section 506(c).    Subject to entry of the Final Order, each of the Secured Parties is entitled to a waiver of (a) any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) the provisions of section 506(c) of the Bankruptcy Code.

F.    Necessity for Relief Requested; Immediate and Irreparable Harm.    The Debtor requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtor has an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the Debtor's assets, absent which immediate and irreparable harm will result to the Debtor, its estate, and its creditors. The preservation and maintenance of the Debtor's assets and business is necessary to maximize values available for distribution to creditors. Absent the Debtor's ability to use Cash Collateral, the Debtor would not have sufficient available sources of working capital or financing and would be unable to pay its operating expenses or maintain its assets, to the severe

6

detriment of the Debtor's estate and creditors.  Accordingly, the relief requested in the Motion and

the terms herein are (i) critical to the Debtor's ability to maximize the value of its chapter 11 estate,

(ii) in the best interests of the Debtor and its estate, and (iii) necessary, essential, and appropriate to

avoid immediate and irreparable harm to the Debtor and its assets.

G.    Good Cause.  Good cause has been shown for entry of this Interim Order, and the

entry of this Interim Order is in the best interests of the Debtor and its estate and creditors.  Among

other things, the relief granted herein will permit the Debtor to preserve and maintain the value of

its assets. The stipulated terms of the Debtor's use of Cash Collateral and proposed adequate

protection arrangements, as set forth in this Interim Order, are fair and reasonable under the

circumstances, and reflect the Debtor's exercise of prudent business judgment consistent with its

fiduciary duties.

H.    Good Faith.  The Debtor's use of Cash Collateral has been negotiated in good faith

and at arms' length among the Debtor and the Secured Parties and the Secured Parties' consent to

the Debtor's use of Cash Collateral shall be deemed to have been made in "good faith."

I.    Notice.  The Debtor has caused notice of the Motion, the relief requested therein,

and the Interim Hearing to be served by facsimile, email, overnight courier, or hand delivery on the

following parties (collectively, the "Notice Parties"): (i) the U.S. Trustee; (ii) holders of the forty

(40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition

Agent; (iv) the cash management banks with which USA Discounters maintains bank accounts; (v)

all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim

in the Prepetition Collateral; (vi) state attorney generals in states in which the Debtors are doing

business; (vii) the United States Attorney's Office for the District of Delaware; (viii) the Internal

Revenue Service; and (ix) all parties who have filed a notice of appearance and request for service

116549.01115/101359834v.3

of papers pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b), (c), and (d).

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      <u>Motion Granted</u>.  The Motion is GRANTED to the extent provided herein on an interim basis.  Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2.      <u>Authorization to Use Cash Collateral</u>.  Until the Termination Date (as defined below), the Debtor is authorized to use the Cash Collateral pursuant to the terms and conditions provided herein.

3.      <u>Budget</u>.

(a)      Except as otherwise provided herein, the Debtor may only use Cash Collateral for, among other things, (i) working capital requirements, (ii) general corporate purposes, and (iii) the costs and expenses of administering the Case (including making adequate protection payments, the payment of the allowed fees and expenses of Case Professionals (defined below), and payments under the Carve-Out as provided herein), in each case, pursuant to and solely in accordance with the 13-week cash collateral budget attached as **Exhibit 1** hereto, which Budget has been approved by the Prepetition Lenders constituting "Required Lenders" under the Prepetition Loan Agreement (the "<u>Required Prepetition Lenders</u>") (as the same may be updated in accordance with the terms of this Interim Order, the "<u>Budget</u>").

8

(b)     No less frequently than every four weeks commencing on September 23, 2015, the Debtor shall deliver an updated Budget for the following 13-week period, inclusive of the week in which such updated Budget is delivered (each, a "Proposed Budget") to the Prepetition Agent with a copy to any official committee appointed in the Cases. The Proposed Budget shall become the Budget upon the written consent of the Required Prepetition Lenders following the Required Prepetition Lenders' reasonable opportunity to review and comment on such Proposed Budget. Each Proposed Budget shall be of no force and effect unless and until it is approved by the Required Prepetition Lenders in accordance with the preceding sentence, and until such approval is given, the prior approved Budget shall remain in effect. Each agreed revised budget shall be filed with the Court.

(c)     Commencing on the first Wednesday following the calendar week in which the Petition Date falls (or the next business day if such day is not a business day), and continuing every week thereafter, the Debtor shall deliver to the Prepetition Agent a weekly variance report from the previous week comparing the actual receipts and disbursements of the Debtor with the receipts and disbursements in the Budget and shall provide a copy to any official committee appointed in the Cases. The Debtor shall ensure that aggregate disbursements, exclusive of payments to any of the Secured Parties or any of their respective professionals, do not exceed 110% of the aggregate budgeted amount, tested every week on a cumulative basis. The cumulative period will restart whenever a Proposed Budget becomes the Budget. The Debtor and the Prepetition Agent may modify the limitations set forth in this Paragraph 3(c) by written agreement, upon notice to any official committee appointed in the Cases, provided that any such modification shall not be adverse to the Debtor's interests.

116549.01115/101359834v.3

(d)    During any Cure Period (as defined below), the Debtor may use Cash Collateral to pay for items previously approved as a Carve-Out below. Notwithstanding anything to the contrary set forth in this Interim Order, unless otherwise ordered by the Court after notice and hearing, the Cash Collateral and the Carve-Out may not be used: (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Prepetition Agent or the Prepetition Lenders or seeking relief that would impair the rights and remedies of the Prepetition Agent or the Prepetition Lenders under the Prepetition Credit Documents or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of the Prepetition Agent or the Prepetition Lenders to recover on the Secured Obligations or seeking affirmative relief against the Prepetition Agent or the Prepetition Lenders; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Secured Obligations or Secured Parties' liens or security interests in the Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Prepetition Agent, the Prepetition Lenders, or their respective liens on or security interests in the Prepetition Collateral that would impair the ability of the Prepetition Agent or the Prepetition Lenders to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Secured Obligations; (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or

10

interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Agent or the Prepetition Lenders; (iii) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions (as defined below) against the Prepetition Agent or the Prepetition Lenders; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens or any other rights or interests of the Prepetition Agent or the Prepetition Lenders; *provided, however*, that no more than $10,000 of the proceeds of the Prepetition Collateral may be used by the Creditors' Committee, if appointed, solely to investigate the foregoing matters within the Challenge Period (as defined herein).

     4.     <u>Effect of Stipulation on Third Parties</u>.

     (a)     Subject to Paragraph 4(b) hereof, each stipulation, admission, and agreement contained in this Interim Order including, without limitation, the Debtor's Stipulations, shall be binding upon the Debtor, the Affiliated Debtors, their estates and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor or the Affiliated Debtors) under all circumstances and for all purposes, and the Debtor and the Affiliated Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

     (b)     Nothing in this Interim Order shall prejudice the rights of any Creditors' Committee or any other party in interest, including any Chapter 7 trustee or Chapter 11 trustee appointed or elected in the Cases prior to the end of the Challenge Period, if granted standing by the Court, to seek, solely in accordance with the provisions of this Paragraph 4, to assert claims against either the Prepetition Agent or the Prepetition Lenders, on behalf of the Debtor and its bankruptcy estate, the Affiliated Debtors and their respective bankruptcy estates, or the creditors

of the Debtor or the Affiliated Debtors or to otherwise challenge the Debtor's Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Agent or any Prepetition Lenders, (ii) the validity, allowability, priority, or amount of the Secured Obligations, or (iii) any liability of either the Prepetition Agent and/or any Prepetition Lenders with respect to anything arising out of, related to, or in connection with the Prepetition Credit Documents or the Debtor or Affiliated Debtors. Any Creditors' Committee or any other party in interest must, after obtaining standing approved by the Bankruptcy Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against either the Prepetition Agent or any Prepetition Lenders (each, a "Challenge") no later than (a) with respect to any Creditors' Committee, the date that is sixty (60) days after the Creditors' Committee's formation, or (b) with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of this Interim Order (collectively, the "Challenge Period"). The Challenge Period may only be extended: (i) with the written consent of the Prepetition Agent, prior to the expiration of the Challenge Period or (ii) as otherwise ordered by the Court for cause shown, prior to the expiration of the Challenge Period. Only those parties in interest who properly commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any Creditors' Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Creditors' Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Case or Cases, or any chapter 7 trustee), shall be deemed to be forever waived

116549.01115/101359834v.3

and barred, (2) all of the findings, Debtor's Stipulations, waivers, releases, affirmations, and other stipulations hereunder as to the priority, extent, and validity as to either the Prepetition Agent's and each Prepetition Lender's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Affiliated Debtors, their respective bankruptcy estates and all creditors, interest holders, and other parties in interest in the Cases, and (3) any and all claims or causes of action against either the Prepetition Agent and/or any Prepetition Lenders shall be released by the Debtor, the Affiliated Debtors, their respective bankruptcy estates, all creditors, interest holders, and other parties in interest in the Cases. For the avoidance of doubt, any trustee appointed or elected in these Cases shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate and/or either of the Affiliated Debtor's respective estates), be deemed to be a party other than the Debtor and/or the Affiliated Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor and/or the Affiliated Debtors in this Interim Order

(c)    Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtor, the Affiliated Debtors, and/or their respective bankruptcy estates, including, without limitation, any Challenge with respect to the Prepetition Credit Documents or the Secured Obligations.

5.    Termination Date. The Debtor's authorization, and the Secured Parties' consent, to use Cash Collateral shall terminate on the earliest to occur of (the "Termination Date"): (i) the

first business day that is at least thirty-five (35) days after the Petition Date (unless such period is extended by the Required Prepetition Lenders) if the Final Order in form and substance acceptable to the Required Prepetition Lenders has not been entered by this Court on or before such date; (ii) the termination or modification of this Interim Order or the failure of this Interim Order to be in full force and effect; (iii) the entry of an order of this Court terminating the Debtor's right to use Cash Collateral; (iv) the first business day that is at least 180 days after the Petition Date (or such later date agreed to in writing by the Required Prepetition Lenders); (v) the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code; (vi) the appointment of a trustee or an examiner with expanded powers; and (vii) the expiration of the Cure Period following the delivery of a Default Notice (as defined herein) by the Required Prepetition Lenders, as set forth in Paragraph 15 below.

6. <u>Reporting Requirements/Access to Records</u>.    The Debtor shall provide the Prepetition Agent with all reporting and other information required to be provided to the Prepetition Agent under the Prepetition Credit Documents (for the avoidance of doubt, as such requirements were modified by that certain *Third Amendment and Forbearance to Loan and Security Agreement* dated as of June 24, 2015 (the "<u>Third Amendment</u>") or by this Interim Order). In addition to, and without limiting, whatever rights to access the Secured Parties have under the Prepetition Credit Documents, subject to existing confidentiality agreements, upon reasonable notice, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of the Secured Parties to: (i) have access to and inspect the Debtor's assets; (ii) examine the Debtor's books and records, and (iii) discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors.

116549.01115/101359834v.3

7.    <u>Insurance</u>.  At all times, the Debtor shall maintain casualty and loss insurance coverage for the Prepetition Collateral on substantially the same basis as maintained prior to the Petition Date.

8.    <u>Adequate Protection</u>.

(a)  <u>Adequate Protection Liens</u>.  Subject to the Carve-Out in all respects and the terms of this Interim Order, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection for and solely to the extent of any decrease in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale, lease of all other Prepetition Collateral, or the imposition of the automatic stay (the "<u>Adequate Protection Obligations</u>"), the Debtor hereby grants to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, fixtures, deposit

15

accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, real property leaseholds and other leases and proceeds thereof (*provided, however*, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event the Prepetition Agent shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests), other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, and causes of action (including causes of action arising under section 549 of the Bankruptcy Code), and, subject to entry of the Final Order, causes of action under sections 502(d), 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions"), and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "Collateral"), having the priority set forth in Paragraph 8(b) below.  To the extent the Secured Parties' liens are by subsequent final, nonappealable order of the Court deemed not to be valid, binding, enforceable, non-avoidable, or perfected, the adequate protection liens authorized herein may be subject to avoidance.

      (b)      Priority of Adequate Protection Liens.

          (i)      Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall be: (a) first priority perfected liens on all of the Collateral that is not otherwise encumbered by validly perfected, non-avoidable security interests as of the Petition Date; (b) first priority perfected liens on all of the Collateral as to which the Secured Parties had a valid and perfected first priority lien as of the Petition Date, and is not otherwise subject to a

16

validly perfected, non-avoidable junior lien of any third party; (c) perfected liens on all Collateral as to which the Secured Parties had a valid and perfected first priority lien as of the Petition Date which is also subject to a validly perfected lien of a third party that is junior to the lien of the Secured Parties, which Adequate Protection Liens shall be junior in priority only to the aforementioned existing liens; and (d) perfected liens on all Collateral that is subject to a validly perfected lien of a third party whether or not subject to the lien of the Secured Parties, which Adequate Protection Liens shall be junior in priority only to such aforementioned existing liens.

(ii)    Subject to the Carve-Out in all respects and the terms of this Interim Order, the Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, and any successors thereto.

(c)    Carve-Out.  For purposes hereof, the "Carve-Out" shall mean the aggregate amount of:

(i)    all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate;

(ii)    subject to subparagraph (d) below, all allowed and unpaid professional fees, expenses and disbursements incurred or accrued (or services rendered) prior to the Termination Date (whenever allowed) by (x) estate professionals retained by order of the Court, including professionals of the Debtor employed under sections 327, 328 or 363 of the Bankruptcy Code ("Estate Professionals") up to the amount provided for such Estate Professionals for the entire period before the Termination Date in the Budget and (y) professionals of a Creditors' Committee

17

retained by order of the Court ("Creditors' Committee Professionals" and, together with the Estate Professionals, the "Case Professionals"), if any, up to the amount provided for such Creditors' Committee Professionals as set forth for the entire period before the Termination Date in the Budget (this clause (ii) being referred to as the "Pre-Termination Date Carve-Out"); *provided, however*, that (A) to the extent that the Termination Date occurs during any given month, the fees set forth in the Budget shall be prorated for the number of days elapsed in such month before the Termination Date; and (B) the Pre-Termination Date Carve-Out shall be determined as among individual Case Professionals solely on the basis of the individual line items set forth in the schedule to the Budget entitled "Professional Fees (Accrual Basis)" (*provided, further*, that any unused amounts in the "Restructuring Counsel" line item shall be available for the "Delaware Counsel" line item, and vice versa);

(iii)    the allowed and unpaid professional fees, expenses and disbursements under sections 328(a), 330, 331, or 363 of the Bankruptcy Code incurred on or after the Termination Date, in the aggregate not to exceed $150,000 for all Estate Professionals (this clause (iii) being referred to as the "Post-Termination Date Carve-Out");

(iv)    not to exceed $102,369 in the aggregate for payment of the Debtor's obligations to or on account of its employees for benefits, vacation pay, severance pay, and any taxes associated with each of the foregoing, as provided on the Budget, as such obligations had accrued through and including the date of the Third Amendment and solely to the extent (A) remaining due and owing and

unpaid on the Termination Date and (B) payment of the foregoing is approved and authorized by the Court, provided that the Carve-Out under this <u>clause (iv)</u> shall reduce dollar for dollar for every dollar paid on account of the foregoing; and

(v)     expenses of paying (A) all of the Debtor's obligations to or on account of its employees for payroll, benefits, vacation pay, severance pay, payments pursuant to the employee retention and incentive programs established in June 2015, and any taxes associated with each of the foregoing but only to the extent that such obligations accrue following the date of the Third Amendment and on or before the Termination Date, in each instance to the extent (1) consistent and as set forth in the Budget, (2) remaining unpaid on the Termination Date, and (3) payment of the foregoing is approved and authorized by the Court (to the extent Court approval is required); and (B) all sales tax obligations that are incurred by Debtor on or before the Termination Date, to the extent remaining unpaid on the Termination Date.

The Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claim, and Adequate Protection Liens are each subject to the Carve-Out in all respects. For the avoidance of doubt, the Carve-Out shall be paid solely from the proceeds of the Collateral and nothing in this Interim Order or otherwise shall be construed to obligate the Secured Parties to directly pay or otherwise satisfy the Carve-Out or to guarantee that the Debtor has sufficient funds to satisfy the Carve-Out.

(d)     <u>Further Provisions Regarding Professional Fees</u>.  For the avoidance of doubt, the provisions of Paragraph 8(c) above shall not constitute a general cap on professional fees (only

116549.01115/101359834v.3

a cap on the amounts the Secured Parties are agreeing to include within the Carve-Out) and such provisions are therefore without prejudice to the rights of any Case Professionals with respect to allowed administrative claims for unpaid fees and expenses. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the Secured Parties to object to the allowance and payment of such fees and expenses. Except in connection with honoring the Carve-Out, the Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case or any successor case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Secured Parties to directly pay compensation to or to reimburse expenses of any Case Professional or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(e)    Payment of Carve-Out Expenses After Termination Date. Any payment or reimbursement made on or after the occurrence of the Termination Date in respect of any allowed fees and expenses of Case Professionals shall permanently reduce the Pre-Termination Date Carve-Out (for fees and expenses incurred before the Termination Date) or the Post-Termination Date Carve-Out (for fees and expenses incurred on or after the Termination Date), as applicable, on a dollar-for-dollar basis; *provided, however,* that the application of any unused retainer held by any Estate Professional shall permanently reduce only the Post-Termination Date Carve-Out in respect of such Estate Professional; and *provided further, however,* that notwithstanding anything to the contrary in this Interim Order, if the Carve-Out is used at any time to pay the Professional Fees, either Pre-Termination Date or Post-Termination Date as set forth herein, and if subsequently unencumbered assets become available or any of the Prepetition Liens are avoided as a preference

116549.01115/101359834v.3

or otherwise, then the Prepetition Agent shall be reimbursed from such unencumbered or recovered assets or proceeds thereof.

9.    Adequate Protection Superpriority Claims.

(a)    Adequate Protection Superpriority Claim.  Subject to the Carve-Out in all respects and the terms of this Interim Order, as further adequate protection for and solely to the extent of any decrease in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral or the use, sale, lease of all other Prepetition Collateral, and only to the extent permitted by sections 503(b) and 507(b) of the Bankruptcy Code, the Prepetition Agent is hereby granted, for the benefit of itself and the Prepetition Lenders, an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in such Case (the "Adequate Protection Superpriority Claim").

(b)    Priority of Adequate Protection Superpriority Claims.  Subject to the Carve-Out in all respects, the Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code.

10.    Other Adequate Protection.

(a)    Adequate Protection Fees and Interest.  As further adequate protection: (i) the Prepetition Agent, for the benefit of the Secured Parties, shall be entitled to receive interest on account of the outstanding Secured Obligations, which shall be accrued and payable and paid in

21

the time and manner set forth in the Prepetition Credit Documents and (ii) the Debtor shall pay, without further Court order, the reasonable and documented costs and expenses, whether incurred before or after the Petition Date, of the Prepetition Agent, and the other Secured Parties, including reasonable and documented attorneys' and financial advisors' fees and expenses, to the extent provided under the Prepetition Credit Documents (including without limitation the fees and expenses of counsel to the Prepetition Agent, Blank Rome LLP) (the "Adequate Protection Fees"). Counsel shall deliver a monthly statement of any requested Adequate Protection Fees (which shall include the total number of hours billed by attorney or other professional and a description of services sufficiently detailed to enable a determination as to the reasonableness of all requested fees and expenses) to counsel for the Debtor, the U.S. Trustee, and any statutory committee appointed in the Case. If the Debtor, U.S. Trustee, or any statutory committee objects to the reasonableness of the requested Adequate Protection Fees and cannot resolve such objection within five (5) calendar days after receipt of such statement, then the Debtor, U.S. Trustee, or statutory committee, as the case may be, shall file with the Court and serve on the Prepetition Agent an objection no later than ten (10) calendar days after receipt of such invoices (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses. The Debtor shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed or as to which no Fee Objection is timely made.

(b)     Payments. As further adequate protection, on the 10th business day of each month, the Debtor shall make payments so that the outstanding balance of the Secured Obligations does not exceed the Maximum Principal Amount (as defined in the Prepetition Loan Agreement; *provided, however*, that for purposes of calculating or reducing the Maximum

22

Principal Amount and giving effect to this Paragraph 10(b), the "Advance Rate" under the Prepetition Loan Agreement shall mean 85% rather than 80%). Any such payments shall be applied as a permanent reduction to the Secured Obligations in accordance with the Prepetition Credit Documents.

(c)    Nature of Payments. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral. To the extent that any cash payment of interest, fees and expenses as adequate protection to the Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payments may be recharacterized and applied as payments of principal owed under the Prepetition Credit Documents; *provided, however*, that the Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

11.    Modification of Automatic Stay. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to provide the adequate protection provided herein; (b) permit the Debtor to perform such acts and the Prepetition Agent may reasonably request to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to make payments in accordance with the terms of this Interim Order.

12.    Cash Management. The Debtor shall maintain its current cash management system during the period that this Interim Order is in effect.

13.    Disposition of Collateral. Other than in connection with ongoing sales of inventory at its stores (including through any "going out of business" sales authorized by the Court), or as otherwise ordered by the Court, the Debtor shall not sell, transfer, lease, encumber

23

or otherwise dispose of any portion of the Collateral without the prior written consent of the Prepetition Agent. Unless otherwise agreed to by the Prepetition Agent in writing and except as expressly provided herein, or as otherwise ordered by the Court, all proceeds of any sale or other disposition of the Collateral shall be paid over to the Prepetition Agent on behalf of the Secured Parties to the extent required by this Interim Order.

14.     <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing by the Prepetition Agent or the Required Prepetition Lenders, shall constitute an event of default (each, an "<u>Event of Default</u>"):

(a)     the Debtor's continued use of Cash Collateral after the Termination Date without the consent of the Required Prepetition Lenders;

(b)     the Debtor's failure to (i) comply with the Budget, subject in each case to any permitted variances permitted hereunder (other than for Professional Fees), or (ii) perform, in any material respect, any of its obligations under this Interim Order, including but not limited to the Debtor's failure to make any payments required under Paragraph 10 hereof;

(c)     the Debtor obtaining credit or incurring indebtedness without the consent of the Required Prepetition Lenders that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or lien of the Secured Parties, or (ii) entitled to priority administrative status which is equal to or senior to that granted to the Secured Parties;

(d)     any lien or security interest purported to be created under the Prepetition Credit Documents shall cease to be, or shall be asserted by the Debtor not

24

to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Credit Documents or herein;

(e)     dismissal of the Case, conversion of the Case to chapter 7, or the appointment of a chapter 11 trustee or examiner with expanded powers in the Case;

(f)     an order shall be entered staying, reversing, vacating, amending, or rescinding any of the terms of this Interim Order without the consent of the Secured Parties (other than in accordance with the Final Order);

(g)     the Debtor shall have failed to deliver to the Prepetition Agent a written analysis of potential cost savings in respect of the Debtor's legal recovery collection budget, as well as operational risks associated with any such potential cost savings, on or before the first business day that is at least 14 days after the Petition Date;

(h)     the Debtor shall have failed to file a chapter 11 plan acceptable to the Required Prepetition Lenders on or before the first business day that is at least 60 days after the Petition Date, it being understood that such an acceptable plan shall include, without limitation: (i) a general estate release for the Secured Parties, and (ii) a fund of $500,000 to be made available to fund distributions under a plan in respect of (1) administrative claims for amounts incurred in excess of the Budget, if any; (2) priority claims for amounts incurred in excess of the Budget, if any; and (3) claims of the Debtor's general unsecured creditors;

116549.01115/101359834v.3

(i)   the Debtor shall have failed to confirm a chapter 11 plan acceptable to the Required Prepetition Lenders (subject to the conditions in 14(h) above) on or before the first business day that is at least 166 days after the Petition Date;

(j)   the Debtor shall have filed with this Court a chapter 11 plan or materially modified any previously filed chapter 11 plan, in each case without the prior written approval of the Required Prepetition Lenders;

(k)   the entry of an order or judgment by this Court or any other court:  (i) modifying, limiting, subordinating, or avoiding the priority of the obligations of the Debtor under this Interim Order, the obligations of the Debtor under the Prepetition Loan Agreement and the other Prepetition Credit Documents, or the perfection, priority, or validity of the Prepetition Liens, or the Adequate Protection Liens; (ii) imposing, surcharging, or assessing against the Secured Parties' claims, the Prepetition Collateral, or the Collateral any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; (iii) impairing the Agent's right to credit bid; or (iv) subject to Paragraph 29 below, authorizing the obtaining of credit or the incurrence of indebtedness that is secured by a security interest, mortgage, or other lien on all or any portion of the Prepetition Collateral or the Collateral which is equal or senior to any security interest, mortgage, or other lien of the Prepetition Agent, for the benefit of the Secured Parties, or entitled to administrative expense priority status which is equal or senior to that granted to the Secured Parties herein;

26

(l)     other than in connection with ongoing sales of inventory at its stores (including through any "going out of business" sales authorized by the Court), the sale of any material portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the Required Prepetition Lenders in their sole discretion;

(m)     any proceeds of any sale or other disposition of the Collateral are not paid over to the Prepetition Agent on behalf of the Secured Parties in the manner contemplated by the Budget, unless otherwise previously agreed to by the Prepetition Agent in writing;

(n)     any Cash Collateral or the Carve-Out is used, whether or not pursuant to Court order, in a manner prohibited by section 3(d) of this Interim Order; or

(o)     the first business day that is at least thirty-five (35) days after the Petition Date if the Final Order has not been entered by the Court by such date.

15.     <u>Exercise of Remedies</u>. Upon the occurrence and at any time during the continuation of an Event of Default, the Prepetition Agent may deliver a written notice of an Event of Default (a "<u>Default Notice</u>"), and the automatic stay is hereby vacated to allow the delivery of any Default Notices, which Default Notice shall be given by email, facsimile, or other electronic means to counsel to the Debtor, the U.S. Trustee, and counsel to the Creditors' Committee, if any. The Debtor shall have seven (7) business days from the date of delivery of such Default Notice to cure such Event of Default (the "<u>Cure Period</u>"). Except as set forth in Paragraph 3 above, the Debtor's right to use, and the Secured Parties' consent to the Debtor's use of, Cash Collateral shall cease as of the expiration of the Cure Period. None of the Secured

Parties shall object to a request by the Debtor, the Creditors' Committee, if any, or a party in interest for an expedited hearing before the Court to determine whether an Event of Default has in fact occurred or, if requested prior to the entry of the Final Order, to seek other relief from the Court.

16.    <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any Adequate Protection Lien, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Lien, incurred prior to the effective date of such reversal, modification, vacatur, or stay.  Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Agent and the Prepetition Lenders shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral or such Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor.

17.    <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, the entry of this Interim Order and the transactions contemplated hereby shall not constitute an admission nor be deemed an admission by any of the Secured Parties that absent their consent to the Debtor's use of Cash Collateral under this Interim Order their interests in the Prepetition Collateral would be adequately protected.  Except as otherwise expressly set forth herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) any of the Secured Parties' rights to seek any other or

28

supplemental relief in respect of the Debtor including the right to seek additional adequate protection; (b) any of the rights of any of the Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Case, conversion of the Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the Secured Parties.

18.    <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of any of the Secured Parties to seek relief or otherwise exercise any of their rights and remedies under this Interim Order, the Prepetition Loan Agreement or the other Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by any or all of the Secured Parties.

19.    <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Secured Parties hereunder is insufficient to compensate for the Adequate Protection Obligations during the Case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Secured Parties, that the adequate protection granted herein does in fact adequately protect any of the Secured Parties against any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

20.    <u>Section 552(b) Waiver</u>.  Subject to entry of the Final Order, the Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply.

116549.01115/101359834v.3

21.    <u>Section 506(c) Waiver</u>.  Subject to entry of the Final Order, the Debtor and its estate waives any claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Secured Parties upon the Prepetition Collateral.

22.    <u>No Marshalling/Application of Proceeds</u>.  Subject to entry of the Final Order, in no event shall any of the Secured Parties be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

23.    <u>Good Faith</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, pursuant to sections 105, 361, 363, and 364 of the Bankruptcy Code, the Debtor, the Prepetition Agent, and the other Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order and are entitled to the protections afforded by sections 363 and 364 of the Bankruptcy Code.

24.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein and as to rights under the Carve-Out, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

25.    <u>No Liability to Third Parties</u>.  Subject to entry of the Final Order, in permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, neither the Prepetition Agent nor the other Secured Parties shall be deemed to be in control of the operations of the Debtor or the Affiliated Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or the Affiliated Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability

116549.01115/101359834v.3

Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor or the Affiliated Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor or the Affiliated Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose upon the Prepetition Agent or the other Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtor, the Affiliated Debtors, and/or their affiliates (as defined in Bankruptcy Code section 101(2)).

26.    Proofs of Claim.  Neither the Prepetition Agent nor the other Secured Parties will be required to file proofs of claim in the Case or any converted case with respect to any obligations under the Prepetition Credit Documents or any other claims or liens granted hereunder or created hereby.  The Prepetition Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claims in the Case on behalf of itself and the Secured Parties in respect of the Secured Obligations.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Secured Parties and/or in addition to the stipulated liens and claims set forth in this Interim Order.  Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in the Case will provide that the Prepetition Agent and other Secured Parties shall have no obligation to comply with the bar date.

27.    Binding Effect of Interim Order.  The provisions of this Interim Order shall be binding upon all parties in interest in the Cases, including the Secured Parties, any statutory committees that may be appointed in any Case, and the Debtor, the Affiliated Debtors and their respective successors and assigns and shall inure to the benefit of the Secured Parties and the Debtor, the Affiliated Debtors and their respective successors and assigns.  Except as provided

31

for in Paragraph 4 hereof, to the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed or elected for the estate of the Debtor, the Affiliated Debtors, whether in the Case or Cases or in the event of the conversion of the Case or Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is a benefit of the Secured Parties' bargain in connection with the Debtor's use of Cash Collateral and is an integral part of this Interim Order.

28.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan, (ii) converting the Case or Cases to a chapter 7 case or (iii) dismissing the Case or Cases.  The terms and provisions of this Interim Order, including, for the avoidance of doubt, the provisions in Paragraph 4 hereof, as well as the adequate protection granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and such claims and liens shall maintain their priority as provided by this Interim Order and the Prepetition Credit Documents and the maximum extent permitted by law until all of the Secured Obligations are indefeasibly paid and satisfied in full in cash.

29.    <u>New Consignment Goods</u>.  The Secured Parties agree that, in connection with certain post-petition inventory sales, (x) the Debtor may acquire and sell additional goods on a consignment basis provided notice is provided to the Prepetition Agent and (y) no such consigned goods will be included among the Collateral.

30.    <u>Effect of Dismissal</u>.  If any of the Cases are dismissed or converted, then neither the entry of this Interim Order nor the dismissal or conversion of the Case or Cases shall affect the rights of the Secured Parties (to the extent of the adequate protection provided hereunder) under the Prepetition Credit Documents or this Interim Order, and all rights and remedies

116549.01115/101359834v.3

thereunder of the Secured Parties (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Case or Cases had not been dismissed or converted. The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any chapter 11 plan, dismissing the Case or Cases or converting the Case or Cases from chapter 11 to chapter 7.

31.    <u>Findings of Fact and Conclusions of Law</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.  To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

32.    <u>Final Hearing</u>.  A hearing on the Debtor's request for entry of the Final Order is scheduled for September 18, 2015, at 1:00 p.m. (prevailing Eastern time) before this Court. Within three (3) business days after entry of this Interim Order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of this Interim Order on the Notice Parties. Any responses or objections to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local Rules, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than September 11, 2015, at 4:00 p.m. (prevailing Eastern time) by the following parties: (a) counsel to the Debtor, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, Los Angeles, California 90067, Attn: Lee R. Bogdanoff, Esq. and Michael L. Tuchin, Esq.; (b) counsel to the Debtor, Pachulski

33

Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones, Esq.; (c) counsel to the Prepetition Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon and One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998, Attn: Kevin J. Baum, Esq.; and (d) the U.S. Trustee, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

33.     Order Effective Upon Entry.   Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

34.     Retention of Jurisdiction.  The Court has and will retain jurisdiction and power to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated: ___8-28___, 2015

_____
HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

116549.01115/101359834v.3